**Jaime C. PAULO, Plaintiff,**

**v.**

**COOLEY, INC., Local Union Independent No. 1 Defendants.**

**Civ. A. No. 87–360 L.**

United States District Court, D. Rhode Island.

May 18, 1988.

Christine McBurney, Pawtucket, R.I., for Jaime Paulo.

Douglas A. Giron, Paul G. Igoe, Hinckley Allen, Providence, R.I., for Cooley, Inc.

Robert Corrente, Providence, R.I., for Independent Union of Awning Material.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

Plaintiff brought this action against Cooley, Inc., ("Cooley") and Local Union Independent No. 1 ("the Union") after Cooley fired him from his job as a floor helper in Cooley's warehouse. The complaint alleges that plaintiff's termination violated the collective bargaining agreement between the Union and Cooley, that the Union breached its duty of fair representation and that Cooley has discriminated against plaintiff on the basis of race. This matter is now before the Court on the motion of defendant Cooley for summary judgment. Defendant claims that it is entitled to summary judgment because plaintiff's breach of contract claim is time-barred and because plaintiff has failed to follow the procedural prerequisites for bringing his claims for employment discrimination. Plaintiff contends that there remain genuine issues of material fact that must be resolved at trial. The Court heard oral arguments on these issues and took the motion under advisement. The matter is now in order for decision.

### Background

Plaintiff began working for Cooley in August 1985. On February 18, 1986 plaintiff asked his foreman, Dick Souza, for two days off: March 13 and 14. Plaintiff requested the time off so that he could care for his minor child while the child's mother underwent medical tests in Boston. Dick Souza initially informed plaintiff that he could not take the time off because the department was shorthanded. Souza also informed plaintiff that pursuant to Cooley's absentee policy, plaintiff would be fired if he was A.W.O.L. (Souza affidavit, p. 2). Some time later plaintiff renewed his request. According to plaintiff, Souza first said, "We'll see" and then later informed plaintiff that he "did not deserve the days off." (Paulo affidavit, p. 1). Plaintiff then contacted his union representative, Ray Durand. According to plaintiff, Durand

told him that he could take the days off and that Durand would "cover" for him. (*Id.*) On March 12 and 13 plaintiff was absent from work. When plaintiff called Souza on March 13, the foreman told him that he was fired.

At all times relevant to this case, plaintiff's employment was governed by the Collective Bargaining Agreement between Cooley and the Union. Article VIII, Section 29 of the agreement establishes a grievance procedure to settle disputes, such as wrongful terminations, arising under the agreement. There are four steps to the grievance procedure:

(a) The aggrieved employee shall first endeavor to settle the dispute with his foreman.

(b) If the dispute is not satisfactorily settled between the aggrieved employee and his foreman, as stated above, within two (2) working days, the dispute shall then be reduced to writing and signed by the aggrieved employee, and the Shop Steward of the Union, together with the aggrieved employee, shall endeavor to settle the same with the aggrieved employee's foreman.

(c) If the dispute is not satisfactorily settled between the Shop Steward of the Union, together with the aggrieved employee and his foreman, as stated above, within two (2) working days, then the Executive Committee of the Union (consisting of not more than four (4) employees), shall endeavor to settle the same with the representative or representatives of the Employer.

(d) If the dispute is not satisfactorily settled between the Executive Committee of the Union and the representative or representatives of the Employer, as stated above, within five (5) working days, then the same shall at any time within thirty (30) days thereafter at the request of either party hereto be submitted [for arbitration]....

Article VIII, Section 35 provides "If any dispute shall not be submitted in writing within five (5) working days after the right to present the same shall have arisen, it shall be deemed to have been waived."

According to Cooley, plaintiff failed to follow this grievance procedure: (1) plaintiff never endeavored to resolve his dispute with his foreman; (2) plaintiff never reduced his grievance to a signed writing; (3) the Union Executive Committee never brought a claim on behalf of plaintiff to the employer representative; and (4) there was never any demand for arbitration with regard to plaintiff's termination. Cooley also claims that although the Union spoke to Cooley about plaintiff's termination, the Union decided not to file a grievance and immediately communicated that decision to plaintiff. (Cooley Statement of Undisputed Facts, pp. 12–16). Plaintiff, on the other hand, claims that he twice attempted to resolve the dispute with Dick Souza, but his foreman would not see him or talk with him. (Paulo affidavit, p. 2) Plaintiff also claims that he sought help from his union representative, Durand, and that for the next several months, he contacted Durand on almost a daily basis inquiring about action taken and the issue of reinstatement. In January 1987, according to plaintiff, Durand finally informed plaintiff that there was nothing that could be done to save his job.

Thereafter, in June 1987, plaintiff commenced this action against Cooley and the Union in Rhode Island Superior Court. Cooley removed the action to federal court under § 28 U.S.C. § 1441(b) because the complaint asserted claims arising under federal labor and employment discrimination laws.

Defendant Cooley now moves for summary judgment under Fed.R.Civ.P. 56. Summary judgment can only be granted where there is no genuine issue as to any material fact and where the movant is entitled to judgment as a matter of law. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 986 (1st Cir.1983). In determining whether these conditions have been met, the Court must view the record in the light most favorable to the party opposing the motion. *Id.*

*Counts I and II—§ 301/Fair
Representation Claim*

In Count I, plaintiff alleges that he "was illegally fired from his job without just cause," and that the firing contravened the terms of his "contract with the ... Union, specifically Article VIII, Section 29." In Count II, plaintiff alleges that defendants "acted in bad faith in the handling of plaintiff's termination." The first two counts of plaintiff's complaint are best understood as asserting a hybrid § 301/fair representation claim: a combination claim that, on the one hand, plaintiff's employer has breached § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a)[1], by violating a collective bargaining agreement and that on the other hand, the union has ignored the duty of fair representation implied under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, with regard to the company's breach of contract.

In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court described the characteristics of the hybrid § 301/fair representation claim:

> It has long been established that an individual employee may bring suit against his employer for breach of a collective-bargaining agreement. *Smith v. Evening News Assn.*, 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246] (1962). Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650 [85 S.Ct. 614, 13 L.Ed.2d 580] (1965); cf. *Clayton v. Automobile Workers*, 451 U.S. 679 [101 S.Ct. 2088, 68 L.Ed.2d 538] (1981) (exhaustion of intraunion remedies not always required). Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement. See *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764 [103 S.Ct. 2177, 2182, 76

L.Ed.2d 298] (1983); *Steelworkers v. Enterprise Corp.*, 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960). In *Vaca* and *Hines*, however, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Vaca v. Sipes*, 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842] (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 [96 S.Ct. 1048, 47 L.Ed.2d 231] (1976); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 [101 S.Ct. 1559, 67 L.Ed.2d 732] (1981); *Bowen v. USPS*, 459 U.S. 212 [103 S.Ct. 588, 74 L.Ed.2d 402] (1983); *Czosek v. O'Mara*, 397 U.S. 25 [90 S.Ct. 770, 25 L.Ed.2d 21] (1970). Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" *Mitchell, supra* [451 U.S.] at 66–67 [101 S.Ct. at 1565–66] (Stewart, J., concurring in judgment), quoting *Hines, supra,* [424 U.S.] at 570–571 [96 S.Ct. at 1059]. The employee may, if he chooses, sue one defendant and not the other; but the

---

**1.** Section 301 confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301." *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir.1987) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983)).

case he must prove is the same whether he sues one, the other, or both.

*Id.*, 462 U.S. at 163–165, 103 S.Ct. at 2290–2291 (footnote omitted).

In its motion for summary judgment, defendant Cooley argues that plaintiff's claim for breach of contract is time-barred. In *DelCostello*, the Supreme Court held that a six month statute of limitations, derived from § 10(b) of the LMRA, applied to hybrid § 301/fair representation actions such as the present case. *Id.* at 169–72, 103 S.Ct. at 2293–94. Moreover, the First Circuit has held that "[a] cause of action in a hybrid Section 301/fair representation suit arises when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Arriaga–Zayas v. Int'l Ladies' Garment Workers*, 835 F.2d 11, 13 (1st Cir.1987) (quoting *Graham v. Bay State Gas Co.*, 779 F.2d 93, 94 (1st Cir.1985)).

Plaintiff filed the present case on June 15, 1987. The question, therefore, is whether plaintiff knew or should reasonably have known of the acts constituting the union's alleged wrongdoing before December 15, 1986. According to Cooley, shortly after plaintiff was terminated, the Union discussed the termination with Cooley, decided not to file a grievance and immediately communicated that decision to plaintiff. According to plaintiff, however, Durand, the union president, did not inform plaintiff he could not get his job back until January 1987. During that time, plaintiff alleges that he was in contact with Durand on almost a daily basis and relied on him to protect his interests. Cooley responds that "[r]egardless of the date that the Union actually notified Paulo of its decision not to pursue a grievance, Paulo had notice under Article VIII, Section 36, within five days of his termination, that there had been a waiver of his grievance for failure to reduce it to writing." Thus Cooley concludes, "Paulo knew or reasonably should have known as of that date that he or the Union, or both, had failed to take contractually man-

dated measures concerning the resolution of disputes."

The Union advanced a similar argument in its motion for summary judgment decided by this Court from the bench several months ago. There, the Union argued that because the collective bargaining agreement required that a grievance be filed within 39 days of a dispute, it was unreasonable for plaintiff to wait fourteen months before filing the suit against the Union and Cooley—even if plaintiff relied on the Union to settle the matter with Cooley. This Court noted that plaintiff contended that he had been in continuous contact with the Union and had relied on the Union completely to inform him of his rights and to handle the grievance. Because there were factual disputes remaining, i.e., whether plaintiff knew what was in the collective bargaining agreement and when plaintiff became aware or should have become aware of the acts constituting the Union's alleged wrongdoing, this Court denied the Union's motion for summary judgment as to Count II.[2]

▆ In the present matter, the existence of these same factual disputes prevent the Court from granting defendant Cooley's motion for summary judgment on Counts I and II. In a hybrid § 301/fair representation claim brought against *the employer*, the six month statute of limitations begins to run when the plaintiff knew or should have known of the acts constituting *the Union's* alleged wrongdoing. Viewing the record in the light most favorable to the plaintiff, there remains for trial genuine issues of material fact concerning the plaintiff's actual and constructive knowledge. Accordingly, this Court denies defendant's motion for summary judgment as to the hybrid § 301/fair representation claim encompassed in Counts I and II of the complaint.

*Count III—Employment Discrimination*

In Count III, plaintiff alleges that his termination was based solely upon race.

---

**2.** Because there was no factual dispute that the Union did not participate in Cooley's decision to fire plaintiff, this Court granted summary judgment for the Union on Count I alleging wrongful termination and Count III alleging employment discrimination.

Although plaintiff specifies no statutory basis for his claim, the complaint may be read to allege violation of both Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1981) and the Rhode Island Fair Employment Practices Act, R.I. Gen.Laws (1956) § 28–5–1 *et seq.* (1986 Reenactment). This Court holds that defendant is entitled to summary judgment on this Count as a matter of law because plaintiff has failed to fulfill the procedural requirements mandated by each statute.

*Rhode Island Law*

■ The Rhode Island Fair Employment Practices Act confers upon the Rhode Island Commission for Human Rights ("the Commission") administrative jurisdiction to hear and resolve claims of unfair employment practices such as employment discrimination. Under the Act, the Commission possesses authority to induce compliance with the Act through the informal methods of "conference, persuasion and conciliation." R.I.Gen.Laws § 28–5–16. If these informal methods are unsuccessful, the Commission may issue a complaint against an employer within one year after the alleged unfair employment practices were committed. R.I.Gen.Laws § 28–5–18; *Roadway Express, Inc. v. Rhode Island Comm'n for Human Rights,* 416 A.2d 673, 674–76 (R.I.1980). Section 28–5–24.1 provides that if the Commission has been unable to secure a conciliation agreement and has not commenced a hearing on a complaint, a complainant may ask for a right to sue in state court if not less than 120 days and not more than two years have elapsed since the date the charge was filed. R.I. Gen.Laws (1956) § 28–5–24.1 (1986 Reenactment).

In the present case it is clear that plaintiff has neither filed a claim with the Commission nor sought its permission to sue the employer in state court. Because plaintiff has failed to comply with the statutory prerequisites to commencing a judicial action under the Rhode Island Fair Employment Practices Act, this Court holds that defendant is entitled to summary judgment as to any claims arising under that Act.

*Federal Law*

■ Plaintiff has similarly failed to follow the procedural requirements mandated under Title VII. One who alleges a violation of Title VII may not sue in federal court until he has exhausted his administrative remedies. *Cook v. Boorstin,* 763 F.2d 1462, 1465 (D.C. Cir.1985); 42 U.S.C. § 2000e–5. Title VII requires a timely charge be filed with the Equal Employment Opportunity Commission ("EEOC") before a suit may be initiated in federal court. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977). If there exists an appropriate state agency, such as the Commission in Rhode Island, a discrimination charge must first be filed with that agency during which time, the EEOC's administrative jurisdiction is suspended for sixty days. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 815–24, 100 S.Ct. 2486, 2491–96, 65 L.Ed.2d 532 (1980); 42 U.S.C. § 2000e–5(c). The purpose of the sixty day deferral is to provide the states with a limited opportunity to resolve discrimination claims locally before a plaintiff is permitted to seek administrative relief before the EEOC. *District Council 47 v. Bradley,* 619 F.Supp 381, 382 n. 1 (D.C. Pa. 1985), *vacated on other grounds,* 795 F.2d 310 (3d Cir.1986). If the dispute is not settled within the sixty day period, the aggrieved employee must pursue his claim at the EEOC prior to initiating a suit in federal court. In all events, the complaining employee must file with the EEOC within three hundred days after the occurence of the alleged unlawful employment practice, 42 U.S.C. § 2000e–5(e), or lose the right thereafter to bring suit in federal court. *United Air Lines, supra,* 431 U.S. at 555 n. 4, 97 S.Ct. at 1887 n. 4; *District Council 47, supra* at 383–84; *Hrivnak v. First of Michigan Corp.,* 617 F.Supp 990, 992 (E.D.Mich.1985).

■ In the present case, plaintiff has not filed a charge with the EEOC or, as discussed above, with the Rhode Island Commission. Having failed to pursue his administrative remedies as required under Ti-

tle VII, plaintiff may not now bring his discrimination claim in federal court.

Notably, plaintiff does not argue that his failure to file a charge with the Rhode Island Commission or the EEOC is excusable in light of the Supreme Court's decision in *Zipes v. Trans World Airlines Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In *Zipes*, the Supreme Court held that the filing of a timely charge with the EEOC is not a jurisdictional prerequisite, rather it is in the nature of a statute of limitations "subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132. Plaintiff has not set forth any equitable grounds for tolling the 300 day period, nor does this Court find any. "In the absence of a recognized equitable consideration, the limitation period cannot be extended by even one day." *Jones v. City of Somerville*, 735 F.2d 5, 8 (1st Cir.1984) (citing *Rice v. New England College*, 676 F.2d 9, 10 (1st Cir.1982). Accordingly, defendant Cooley is entitled to summary judgment as to plaintiff's employment discrimination claims arising under Title VII.

### Conclusion

Defendant Cooley's motion for summary judgment as to the hybrid § 301/fair representation claims set forth in Counts I and II of the complaint is denied. Said defendant's motion for summary judgment on Count III is granted.

*It is So Ordered.*