**Michael ATKINSON, Plaintiff,**

v.

**HALLIBURTON COMPANY, a Delaware corporation, Defendant.**

No. 84805.

Supreme Court of Oklahoma.

Oct. 10, 1995.

The Stipe Law Firm by Mark Wiemer, Oklahoma City, for Plaintiff.

Lytle, Soulé & Curlee by Peter T. Van Dyke, Deborah S. Block and Sam Reynolds Fulkerson, Oklahoma City, for Defendant.

HODGES, Justice.

Pursuant to the Oklahoma Uniform Certification of Questions of Law Act, Okla.Stat. tit. 20, §§ 1601–1611 (1991), the United States District Court for the Western District of Oklahoma certified the following questions to this Court:

(1) Whether a plaintiff may pursue a tort claim for discharge from employment in violation of public policy, without also pleading the statutory claims authorized by the statute enunciating the public policy; and

(2) if such action be maintained, whether an element of the tort claim is compliance with any procedural requirements set forth in the statute enunciating the public policy.

We answer question one in the affirmative. Plaintiff may pursue a tort claim for discharge from employment in violation of public policy without pleading the statutory claims authorized by the Oklahoma Anti–Discrimination Act (the Act), Okla. Stat. tit. 25, §§ 1101–1901 (1991).

We answer question two in the affirmative. Since § 1901 of the Act provides a private cause of action for handicap discrimination when there is dissatisfaction with the outcome of the statutory procedures, plaintiff may not pursue a tort claim for discharge in violation of public policy without first complying with those procedures. Therefore, a prerequisite to filing a tort claim alleging discharge from employment in violation of Oklahoma's public policy against handicap discrimination is exhaustion of the procedural requirements of the Act.

## I. RELEVANT FACTS

Plaintiff, Michael Atkinson, was hired by defendant, Halliburton Company, as a draftsman in the surface engineering department on April 1, 1974. Plaintiff is deaf, and was deaf at the time of his hiring. Defendant was aware of plaintiff's hearing impairment at the time of his hiring. Plaintiff was terminated on March 20, 1992, allegedly in conjunction with an ongoing reduction in defendant's work force.

On March 21, 1994, plaintiff filed a petition in the District Court of Stephens County alleging that he had been terminated in violation of Oklahoma's public policy against handicap discrimination. The case was removed by defendant to the United States District Court for the Western District of Oklahoma on diversity jurisdiction.

Plaintiff did not file a charge of discrimination with either the Equal Employment Opportunity Commission (EEOC) or the Oklahoma Human Rights Commission (OHRC) prior to filing this action. Plaintiff alleges that defendant violated Oklahoma public policy as set forth in the Oklahoma Anti–Dis-

crimination Act, Okla.Stat. tit. 25, § 1302 (1991). Plaintiff did not join his public policy claim with any other cause of action, thus the issue arises of whether a public policy tort claim may be asserted if totally severed from statutory claims and statutory procedures.

## II. ANALYSIS OF ISSUES PRESENTED

The legislature of this state enacted an anti-discrimination statute, Okla.Stat. tit. 25, §§ 1101–1901 (1991), with the purpose of "provid[ing] for execution within the state of the policies embodied in the federal Civil Rights Act of 1964,[1] the federal Age Discrimination in Employment Act of 1967,[2] and Section 504 of the federal Rehabilitation Act of 1973[3] ...." Okla.Stat. tit. 25, § 1101 (1991). Sections 1501 through 1901 of the Act contain a detailed outline of an administrative scheme by which the goals of the Act are to be furthered. When discrimination exists, § 1505(A) directs that the OHRC is to "endeavor to eliminate the discriminatory practice by conference, conciliation and persuasion." This seems a clear indication that the public policy of this Act is not only to investigate and eliminate discriminatory practices, but also to decrease the litigation incident to charges of discrimination.

### A. Exclusivity of Statutory Claims

█ This Court recognized a limited public policy exception to the terminable-at-will rule as an actionable tort claim in cases in which the discharge is contrary to public policy. *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989). There can be no doubt that handicap discrimination in the workplace is a clear contravention of the public policy declared by the Act. Therefore, we find that a handicap motivated discharge comes within the protection of *Burk.*

In *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218, 1226 (Okla.1992), we acknowledged that "[w]here the common law gives a remedy, and another is provided by statute, the latter is merely cumulative, unless the statute de-

clares it to be exclusive." We find nothing in § 1901, nor in the rest of the Act which compels the abrogation of the common-law *Burk* claim.

We stated in *Tate* that the Act does not provide exclusive remedy for racial discrimination. *Tate,* 833 P.2d at 1226–27. We likewise find that the Act does not provide exclusive remedy for handicap discrimination. The plaintiff may pursue a tort claim for discharge from employment in violation of public policy without pleading the statutory claims authorized by the Act.

### B. Exhaustion of Administrative Procedures

█ Plaintiff seeks to circumvent the administrative scheme and take his grievance directly to the courts of this state. It is a long established doctrine in Oklahoma that exhaustion of statutory remedies is a jurisdictional prerequisite for resort to the courts. *Martin v. Harrah Indep. School Dist.,* 543 P.2d 1370, 1372 (Okla.1976); *Sanders v. Oklahoma Employment Sec. Comm'n,* 200 Okl. 366, 195 P.2d 272 (1948); *Speaker v. Board of County Comm'rs of Oklahoma County,* 312 P.2d 438 (Okla.1957). The doctrine of exhaustion of administrative remedies is a well settled rule that aids in the administration of justice and prevents transfers to the courts of duties imposed by law on administrative agencies. *Martin,* 543 P.2d at 1372.

There are several reasons for the rule of exhaustion of administrative remedies. These include the expertise of the agency in the subject matter area and notions of judicial efficiency. *Id.* at 1374 (citing *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)). The United States Court of Appeals for the D.C. Circuit stated well the reasons for the exhaustion rule:

1) Carries out legislative purpose in granting authority to an agency by discouraging frequent deliberate flouting of administrative procedure;

---

**1.** 28 U.S.C. § 1447 (1988); 42 U.S.C. §§ 1971, 1975a–1975d, 2000a to 2000h–6 (1988).

**2.** 29 U.S.C. §§ 621–634 (1988).

**3.** 29 U.S.C. §§ 701–797b (1988).

2) protects agency autonomy by allowing the agency in the first instance to apply its expertise and correct its errors;

3) aids judicial review by allowing parties to develop material facts in agency proceedings; and

4) promotes judicial economy by avoiding repetition of judicial and administrative factfinding and perhaps the necessity for judicial involvement.

*Andrade v. Lauer,* 729 F.2d 1475, 1484 (D.C.Cir.1984).

A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies first, the courts may never have to intervene. *Martin,* 543 P.2d at 1374. Such is the reasoning behind the exhaustion doctrine applied by federal courts in regard to the federal statutes referenced by § 1101 of the Act.

The United States Supreme Court stated in *Patterson v. McLean Credit Union,* 491 U.S. 164, 180–81, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989), that "[i]n Title VII, Congress set up an elaborate administrative procedure ... that is designed to assist in the investigation of claims of racial discrimination ... and to work towards the resolution of these claims through conciliation rather than litigation." The Supreme Court further stated that if a plaintiff was allowed to bring a civil suit without first resorting to the administrative scheme of Title VII, "the detailed procedures of Title VII [would be] rendered a dead letter." *Id.* at 181, 109 S.Ct. at 2375; *see also Stearns v. Consol. Management, Inc.,* 747 F.2d 1105, 1112 (7th Cir.1984) (stating that a fundamental objective of the federal antidiscrimination statutes is to avoid civil litigation through a statutorily mandated process of administrative conciliation).

### C. Statutory Interpretation

Plaintiff argues that the administrative scheme outlined in the Act is permissive and may be utilized or not utilized at the discretion of the charging party. We do not agree. An examination of the language of § 1901 of the Act rebuts plaintiff's assertion. Applying established tools of statutory interpretation, we find that the administrative scheme of the Act was designed to precede resort to the courts.

"The cardinal rule of statutory construction is to ascertain and give effect to legislative intent." *Naylor v. Petuskey,* 834 P.2d 439, 440 (Okla.1992). The legislature summarized the purposes of the Act as "[a]n act to prevent discrimination ... and to provide for enforcement of its provisions through civil, administrative, and criminal proceedings...." 1968 Okla.Sess. Laws ch. 388. The legislature intended not only to combat discrimination, but also to provide the enforcement mechanisms necessary to do so.

The legislative intent may also be ascertained from the language in the title of an act. *Naylor,* 834 P.2d at 441. Section 1901 of the Act contains the provisions relating to discrimination on grounds of handicap. This section was added to the Act in 1990. The title of the act adding § 1901 was:

An Act relating to definition and general provisions; **providing for filing charge for discrimination** in employment on grounds of handicap; **providing for enforcement through civil proceedings;** providing time limit; providing venue; providing for jury trial; providing for damages and limitations; providing for certain attorneys fees; providing for codification; and providing an effective date. (emphasis added).

1990 Okla.Sess.Laws ch. 200. The language of the title supports the conclusion that the legislature intended the procedures of the Act to be the method by which charges of discrimination based on handicap would be resolved.

Plaintiff argues that this entire statutory scheme is optional and that, therefore, the legislature intended to allow charging parties to resort directly to judicial intervention. In arguing for this interpretation, plaintiff relies on an interpretation of § 1502(A) which reads:

"A person claiming to be aggrieved by a discriminatory practice ... **may** file with the Commission [OHRC] a written sworn complaint stating that a discriminatory

practice has been committed...." (emphasis added).

Plaintiff argues that the use of the word "may" makes the filing of a complaint permissive rather than mandatory and that the legislature, therefore, did not intend that the filing of the complaint be required before resorting to the courts. We agree that the word "may" usually is permissive. *Tate,* 833 P.2d at 1229. However, in this case we disagree with plaintiff's conclusion.

As we stated recently in *Naylor,* "[t]he words of a statute will be given a plain and ordinary meaning, unless contrary to the purpose and intent of the statute as a whole." *Naylor,* 834 P.2d at 441. The language of the statute, when taken as a whole, leads us to conclude that the use of the term "may" was not intended to allow plaintiff to completely ignore the statutory scheme. We have previously stated that "the use of the word 'shall' by the legislature imposed a legal duty...." *Maule v. Indep. Sch. Dist. No. 9,* 714 P.2d 198, 202 (Okla.1985). We conclude that the use of the word "may" confers upon an aggrieved party the **right** to seek redress for his grievances without imposing on that party a **legal duty** to do so. In short, not everyone who believes themselves to have been a target of handicap discrimination must seek to remedy it, to that extent the Act is permissive. Those who do wish to seek redress are empowered to do so through the statutory scheme.

The language of the statute itself provides additional support for this interpretation. Section 1901, which provides a private cause of action for discrimination based on handicap, uses the filing of the complaint as a reference point in several of its subsections. Subsection A states that "[i]f a charge for discrimination in employment on the basis of handicap is filed ... and not resolved to the satisfaction of the charging party within one hundred eighty days from the filing of such charge, the charging party may commence an action for redress ... in the district court...." This provision states clearly that an aggrieved party may resort to the courts for redress, however, it is also clear that the intent was to allow the statutory scheme one

hundred eighty days to resolve the charges **before** intervention by the courts.

Subsections C and E of § 1901 also require the filing of a complaint with OHRC. Subsection C bases back pay liability on the date of filing a complaint with OHRC and subsection E starts the statute of limitations running with the filing of a complaint with OHRC. If the Act is construed not to require the filing of a complaint before resorting to the courts, it renders § 1901 meaningless and irrelevant. It would, as the Supreme Court said in *Patterson,* be "rendered dead letter." *Patterson,* 491 U.S. at 181, 109 S.Ct. at 2375.

Finally, we compare § 1901 of the Act with § 1506.1 of the Act. Section 1506.1 contains provisions providing for filing a civil action in cases of alleged discriminatory housing practices or the breach of a conciliation agreement. In § 1506.1(C) the legislature clearly states that "[a]n aggrieved person may file an action pursuant to this section whether or not a complaint has been filed ... and without regard to the status of any complaint filed pursuant to this section." No such language appears in § 1901.

The maxim "expressio unius est exclusio alterius," that the expression of one thing is the exclusion of the other, aids in determining legislative intent. *Pub. Serv. Co. of Okla. v. State ex rel. Corp. Comm'n.,* 842 P.2d 750, 753 (Okla.1992); *Newblock v. Bowles,* 40 P.2d 1097, 1100 (Okla.1935). The legislature wrote a provision in which the filing of a complaint is clearly not a condition precedent to filing a civil action. Okla.Stat. tit. 25, § 1506.1(C). The expression of the exception in § 1506.1(C) implies the exclusion of the exception in § 1901. The language of § 1901 combined with the lack of language similar to that found in § 1506.1(C) supports the conclusion that exhaustion of the administrative remedies provided in § 1901 is a condition precedent to filing a civil action for redress.

### D. Inapplicability of *Burk* and *Tate* to Exhaustion of Administrative Procedures

Plaintiff argues that an interpretation of the Act such as we have adopted today con-

flicts with prior decisions by this Court. Plaintiff notes the decision of this Court in *Burk*. We do not depart from that decision. In fact, § 1901 of the Act merely codifies that cause of action in cases of discriminatory practices based on handicap. However, nothing in *Burk* would prohibit the legislature from requiring that an administrative solution be attempted first, so long as the statutory procedures allow final resort to the courts in the event of the dissatisfaction of the aggrieved party with the administrative result.

Plaintiff also argues that this question should be decided by the reasoning used by this Court in *Tate*. We disagree. In *Tate* we held that the statutes governing discriminatory practices based on race were not exclusive and that a common-law *Burk* claim could be stated. *Tate*, 833 P.2d at 1230. *Tate* was decided based on the law as it existed in 1989. At that time, a decision that discrimination was redressable solely by administrative means would have resulted in the abrogation of the common-law *Burk* claim. The statute provided no private cause of action, therefore, an aggrieved party could not vindicate his rights in court without having a common-law claim. We could not conclude that racial discrimination was redressable **solely** by Commission (OHRC) proceedings. *Tate*, 833 P.2d at 1229. However, we noted the differences in remedies the Act provided for racial and handicap discrimination, but withheld judgment on the consequences of those differences. *Id.* at 1229–30. Since the addition of § 1901 to the Act, the OHRC no longer has the last word on handicap discrimination under the administrative scheme. Under § 1901, the aggrieved party may still file his common-law claims. However, that party must first attempt to resolve the charges as the legislature intended, through the statutory procedures.

Since the statute provides a private cause of action as part of the statutory scheme, the right of the aggrieved party to seek redress from the courts is protected. Therefore, the reasoning behind *Tate*, though sound in its application to the racial discrimination provisions of the Act, does not apply in the instant case. Both *Burk* and *Tate* dealt with the issue of whether or not a common-law tort cause of action could be stated given the facts of the case. In contrast, the instant case deals with **when** that cause of action may be filed. We do not decide that plaintiff may not file a *Burk* or *Tate* claim for handicap discrimination, we only decide that he must first exhaust his administrative remedies.

We conclude that § 1901 provides a private cause of action, subject to the exhaustion of the statutory procedures, for those dissatisfied with the administrative remedies. When a party's right of access to the courts is protected by following the statutory scheme, exhaustion of the procedures of that scheme is a condition precedent to filing an action with the courts.[4]

**CERTIFIED QUESTIONS ANSWERED.**

ALMA WILSON, C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

KAUGER, V.C.J., and SUMMERS, J., concur in result.

OPALA, J., concurs in part, dissents in part.

WATT, J., dissents.

---

4. For similar results, see *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989); *Van Scoyk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978); *Koehn v. Pabst Brewing Co.*, 763 F.2d 865 (7th Cir.1985); *Mursch v. Van Dorn, Co.*, 627 F.Supp. 1310 (W.D.Wis.1986); *Paulo v. Cooley, Inc.*, 686 F.Supp. 377 (D.R.I.1988); *Boge v. Ringland–Johnson–Crowley Co.*, 976 F.2d 448 (8th Cir.1992).