Dear Representative Claunch
¶ 0 This Office has received your request for an Attorney General Opinion addressing, in effect, the following question:
Does Title 8 O.S. 168 (1998) exempt a non-profit entityorganized and operating as a cemetery under Section 501(c)(13) ofthe Internal Revenue Code from inspections and examinationspermitted to the State Banking Commissioner in 8 O.S. 166(1998).
¶ 1 Your question in effect asks whether a cemetery, operating under Section 501(c)(13) of the Internal Revenue Code, qualifies as an exempt non-profit entity under 8 O.S. 168 (1998) of the Perpetual Care Fund Act ("Act"). In order to answer this questions, a review of certain provisions of the Act and Internal Revenue Code will be necessary.
¶ 2 The Act in part, requires that cemeteries set aside in a trust fund a certain percentage of the purchase price for grave sites and mausoleum crypts. The income from the trust fund can only be spent for the perpetual care of the cemetery in accordance with the terms of the Act. See 8 O.S. 163 (1998). Section 8 O.S. 166 grants the State Banking Commissioner broad regulatory jurisdiction over the trust funds created by the Act. Section 8 O.S. 166 reads:
 A. The owner of a cemetery maintaining a Perpetual Care Trust Fund shall be required to file a report of each cemetery by March 15 of each year with the State Banking Commissioner, showing, for the preceding calendar year:
 1. The gross amount received from sales of grave spaces, lots, mausoleum crypts and niches;
 2. The total purchase price of grave spaces, lots, mausoleum crypts and niches on contracts which received final payment and required deposits to the Perpetual Care Fund during the calendar year;
 3. The operating expenses incurred during the calendar year which are eligible to be paid from income of the Perpetual Care Fund;
 4. The total amount of the principal of the Perpetual Care Fund as of the beginning of the preceding calendar year; and
 5. The amount segregated and deposited in the Perpetual Care Fund as provided by this act which shall be certified by the trustee of the Perpetual Care Fund as to the correctness thereof, and the trustee shall provide:
 a. the total amount of the principal of the Perpetual Care Fund as of the end of the calendar year,
 b. the securities and other assets in which such perpetual care funds are invested,
c. the cash on hand,
 d. a verification in writing of all assets in which monies of the Perpetual Care Fund have been invested; provided, such verification shall be obtained from the holder or holders of such assets,
 e. the income derived from the Perpetual Care Fund investments during the calendar year, and
 f. the gross expenditures or transfers from income of the Perpetual Care Fund during the calendar year.
 B. The Commissioner shall have authority, at any time, to inspect the books and records of any such cemetery, and to make an examination thereof for the purpose of determining if proper sums have been deposited with the trustee in the Perpetual Care Fund, and if the Fund is being properly administered by the trustee in accordance with the provisions of the Perpetual Care Fund Act and rules of the Commissioner. Each cemetery owner and trustee is responsible for maintaining satisfactory books and records which adequately justify all information contained in the annual report required by this section. The Commissioner shall charge and collect a fee for such examination, which fee shall be deposited in the Cemetery Merchandise Trust Act Revolving Fund.
8 O.S. 166 (1998).
¶ 3 Title 8 O.S. 168 (1998), which is at issue here, provides exceptions to this jurisdiction. Section 8 O.S. 168 states:
 The provisions of the Perpetual Care Fund Act shall not apply to municipal, religious, fraternal, corporate, rural or nonprofit entities, free community burial grounds, county cemetery associations, Indian tribal cemeteries on tribal land and charitable or eleemosynary institutions operating cemeteries in this state.
8 O.S. 168 (1998) (emphasis added).
¶ 4 As stated above, Section 8 O.S. 168 excludes non-profit entities from the other provisions of the Act. Your question asks whether a cemetery, operating under Section 501(c)(13) of the Internal Revenue Code, qualifies as an exempt non-profit entity under 8 O.S. 168 (1998).
¶ 5 In this regard, 26 U.S.C.A. 501(c)(13) (Supp. 1999) of the Internal Revenue Code provides in pertinent part:
 Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit;[1] and any corporation chartered solely for the purpose of the disposal of bodies by burial or cremation which is not permitted by its charter to engage in any business not necessarily incident to that purpose and no part of the net earnings of which inures to the benefit of any private shareholder or individual.
¶ 6 Neither the Act nor Section 26 U.S.C.A. 501(c)(13) defines what a "non-profit entity" is. Therefore, the rules of statutory construction must be employed to determine whether a cemetery, operating under Section 501(c)(13) of the Internal Revenue Code, qualifies as an exempt non-profit entity under 8 O.S. 168
(1998).
¶ 7 "The cardinal rule of statutory construction is to ascertain and give effect to legislative intent." Atkinson v.Halliburton Co., 905 P.2d 772, 775 (Okla. 1995), (quotingNaylor v. Petuskey, 834 P.2d 439, 440 (Okla. 1992)). "In ascertaining such intent, we are to interpret the language of the . . . [A]ct with a `reasonable and sensible construction'." Cityof Chandler v. State ex rel. Dep't. of Human Services,839 P.2d 1352, 1354 (Okla. 1992), (quoting Udall v. Udall, 613 P.2d 742,745 (Okla. 1980)). Here, a reasonable and sensible construction of the statute leads to a determination that such an operation does qualify as an exempt non-profit entity under 8 O.S. 168
(1998).
¶ 8 Webster's Ninth New Collegiate Dictionary defines "non-profit" as "not conducted or maintained for the purpose of making profit." Webster's Ninth New Collegiate Dictionary, 804 (1991). A cemetery operating under 501(c)(13) of the Internal Revenue Code necessarily is "not operating for profit." Therefore, a reasonable and sensible construction of Section 168 leads to the conclusion that such a cemetery qualifies as a "non-profit entity" under Section 168, because without a statutory definition of "non-profit entity", the plain and ordinary meaning must be employed. See Atkinson,905 P.2d at 776; Speer v. Petrolite Specialty Polymers Group, 918 P.2d 92,94 (Okla.Ct.App. 1996). Under Webster's definition, it is clear that the plain and ordinary meaning of non-profit is the same as the meaning set forth in the Internal Revenue Code.
¶ 9 Thus, the logical conclusion is that the Legislature intended the "non-profit entity" exemption to Section 168 to mean those entities not operated for profit, which is essentially the plain meaning of the word. To the extent that a cemetery operating under Section 501(c)(13) of the Internal Revenue Code is necessarily an entity not operated for profit, it follows that the cemetery qualifies as an exemption under Section 168 from the regulatory jurisdiction of the State Banking Commission. This Opinion does not change the result of Attorney General Opinion 96-085 which provides that the amendments to the Act may not be applied retroactively.
¶ 10 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Title 8 O.S. 168 (1998) does exempt non-profit entitiesorganized as a cemetery under Section 26 U.S.C.A. 501(c)(13) ofthe Internal Revenue Code, from inspection and examinationpermitted the State Banking Commission in 8 O.S. 166 (1998).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOSEPH L. McCORMICK IV ASSISTANT ATTORNEY GENERAL
[1] To qualify for (c)(13) status a company must be operated exclusively for the benefit of its members and not operated for profit. It is assumed for the purposes of this opinion, that the non-profit entity qualified for (c)(13) status.