2013 OK 98

**Kevin HEDRICK, Plaintiff/Appellant,**

**v.**

**The COMMISSIONER of the DEPART-MENT OF PUBLIC SAFETY, State of Oklahoma, Defendant/Appellee.**

**No. 110199.**

Supreme Court of Oklahoma.

Nov. 26, 2013.

Michael L. Gardner, Law Offices of Joe Farnan, Purcell, Oklahoma, for Plaintiff/Appellant.

A. Deann Taylor, (Former) Assistant General Counsel, Department of Public Safety, Brian K. Morton, Assistant General Counsel, Department of Public Safety, Oklahoma City, Oklahoma, for Defendant/Appellee.

KAUGER, J.:

¶ 1 The dispositive issues are whether the holder of a driver's license brought a timely appeal to challenge his driver's license revocation and whether he was required to provide the district court with a certified copy of a Department of Public Safety (DPS) revocation order when he appealed the revocation. We hold that: the appeal was timely; 47 O.S. Supp.2007 § 2–111 expressly deems photocopies of DPS records to be considered originals for all purposes and admissible as evidence in all courts; [1] and that pursuant to 12 O.S.2011 § 3004(3), a certified copy of the DPS order was not required.[2]

## FACTS

¶ 2 The defendant/appellant, Kevin B. Hedrick (Hedrick) was arrested for driving under the influence in McClain County, Oklahoma. Details as to the date and circumstances surrounding the arrest are not provided in the record.[3] DPS held a hearing on

---

1. Title 47 O.S.2007 § 2–111 provides:
 A. All records of the Department, other than those declared by law to be confidential for the use of the Department, shall be open to public inspection during office hours.
 B. The Commissioner shall supervise the maintaining of all records of the Department and shall adopt rules concerning the destruction and retention of records. Records of the Department shall not be subject to the provisions of:
 1. Sections 305 through 317 of Title 67 of the Oklahoma Statutes or be transferred to the custody or control of the State Archives Commission;
 2. Section 590 of Title 21 of the Oklahoma Statutes; or
 3. The Records Management Act, Sections 201 through 215 of Title 67 of the Oklahoma Statutes.
 The Commissioner may, pursuant to an adopted rule, order destruction of records deemed to be no longer of value to the Department in carrying out the powers and duties of the Department.
 C. 1. The Commissioner may cause any or all records kept by the Department of Public Safety to be photographed, microphotographed, photostated, reproduced on film, or stored on computer storage medium. The film or reproducing material shall be of durable material, and the device used to reproduce the records on the film or reproducing material shall accurately reproduce and perpetuate the original records in all detail.
 **2. The photostatic copy, photograph, microphotograph, photographic film or computerized image of the original records shall be deemed to be an original record for all purposes and shall be admissible as evidence in all courts or administrative agencies. A facsimile, exemplification, or certified copy thereof shall be deemed to be a transcript, exemplification, or certified copy of the original.**
 3. The photostatic copies, photographs, microphotographs, reproductions on film, or computerized images shall be placed in conveniently accessible files and provisions made for preserving, examining, and using the copies, photographs, microphotographs, reproductions on film and computerized images. The Commissioner of Public Safety is empowered to authorize the disposal, archival storage, or destruction of the original records or papers. (Emphasis supplied.)

2. Title 12 O.S.2011 § 3004(3) provides:

 The original is not required, and a duplicate or other evidence of the contents of a record is admissible if:
 1. All originals are lost or have been destroyed unless the proponent lost or destroyed them in bad faith;
 2. No original can be obtained by any available judicial process or procedure;
 3. At a time when an original was under the control of the party against whom offered, the party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearings and the party does not produce the original at the hearing; or
 4. The record is not closely related to a controlling issue.
 Because this statute remains unchanged since 2002, references are to the current version.

3. Title 47 O.S. Supp.2005 § 754 provides in pertinent part:

 A. Any arrested person who is under twenty-one (21) years of age and has any measurable quantity of alcohol in the person's blood or breath, or any person twenty-one (21) years of age or older whose alcohol concentration is eight-hundredths (0.08) or more as shown by a breath test administered according to the provisions of this title, or any arrested person who has

September 2, 2009, and determined that Hedrick's driving privileges should be revoked for 180 days. DPS mailed Hedrick a copy of its revocation order on September 23, 2009. On October 30, 2009, Hedrick filed an appeal of the DPS revocation to the District Court of McClain County and attached a copy of the DPS revocation order which DPS had mailed him. Hedrick sought to set aside the revocation, or in the alternative, have it modified based on extreme and usual hardship.

¶3 When the matter came for trial on February 2, 2010, DPS objected to the trial court's jurisdiction to hear the appeal because Hedrick had not provided a certified copy of its order to the trial court. DPS also argued that the appeal was untimely, because it was filed thirty-seven days after it mailed the order to Hedrick.[4] At the trial, DPS acknowledged that it issues thousands of these orders, but insisted that unless Hedrick provided a certified copy of the order, the trial court could not review the matter.

¶4 Hedrick's attorney asked the DPS lawyer if she had a certified copy and she said it was not her burden to show that Hedrick had a right to be in the district court or that his appeal was timely. When the trial court asked if it could take judicial notice of the official business records of DPS, DPS contended that if it were not a certified copy, it was not sufficient evidence.[5] DPS insisted that it was Hedrick's burden and that DPS was not required to provide a certified copy of its administrative order. The trial court recessed the matter and instructed the parties to submit briefs on the issues.

¶5 DPS submitted a brief on February 22, 2010, and Hedrick replied on March 22, 2010. On April 12, 2010, the matter was assigned to another trial judge, but nothing happened in the cause until nearly eighteen months later when DPS filed a motion to dismiss for failure to prosecute. Hedrick's lawyer responded, explaining that: 1) the trial court did not reset the hearing; 2) all of his cases at DPS were reset because of DPS's shortage of attorneys; and 3) he was willing to get a court date, but DPS had not cooperated on setting a date.

refused to submit to a breath or blood test, shall immediately surrender his or her driver license, permit or other evidence of driving privilege to the arresting law enforcement officer. The officer shall seize any driver license, permit, or other evidence of driving privilege surrendered by or found on the arrested person during a search....

4. Title 47 O.S. Supp.2006 § 6–211(E) provides:

E. The petition shall be filed within thirty (30) days after the order has been served upon the person, except a petition relating to an implied consent revocation shall be filed within thirty (30) days after the Department gives notice to the person that the revocation is sustained as provided in Section 754 of this title. It shall be the duty of the district court to enter an order setting the matter for hearing not less than fifteen (15) days and not more than thirty (30) days from the date the petition is filed. A certified copy of petition and order for hearing shall be served forthwith by the clerk of the court upon the Commissioner of Public Safety by certified mail at the Department of Public Safety, Oklahoma City, Oklahoma.

5. The trial court is required to examine all of the records on file in DPS relative to an offense committed. Title 47 O.S. Supp.2006 § 6–211(I) provides:

The court shall take testimony and examine the facts and circumstances, including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of the person, and determine from the facts, circumstances, and records whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department. The court may also determine whether or not, from the person's previous driving record, the order was for a longer period of time than such facts and circumstances warranted. In case the court finds that the order was not justified, the court may sustain the appeal, vacate the order of the Department and direct that driving privileges be restored to the petitioner, if otherwise eligible. The court may, in case it determines the order was justified, but that the period of the suspension or revocation was excessive, enter an order modifying the same as provided by law.

Title 47 O.S. Supp.2005 § 2–110 provides in pertinent part:

C. The Commissioner and any other officers of the Department as the Commissioner may designate are hereby authorized to provide a copy of any record required to be maintained by the Department at no charge to any of the following government agencies when requested in the performance of official governmental duties:

... 2. Any court, district attorney or municipal prosecutor in this state or any other state;

¶ 6 On October 5, 2011, the trial court dismissed the case because Hedrick did not provide a certified copy of the DPS revocation order. It determined that: 1) Hedrick had the burden of proving jurisdiction and an uncertified copy of the DPS order was incomplete evidence to establish jurisdiction; and 2) the appeal was untimely. On October 17, 2011, Hedrick filed a motion to reconsider which the trial court denied on November 14, 2011.

¶ 7 On December 14, 2011, Hedrick appealed and the Court of Civil Appeals in an unpublished opinion affirmed on May 10, 2013,[6] holding that, while the trial court had jurisdiction to hear the case,[7] the photocopy of the DPS order was incompetent to establish that DPS ever revoked Hedrick's driver's license under 47 O.S. Supp.2006 § 6–211(F).[8] Certiorari was granted on October 14, 2013, and assigned to these chambers.

6. The Court of Civil Appeals initially issued an opinion on March 15, 2013, and Hedrick filed for rehearing on April 4, 2013. In an order dated May 10, 2013, the Court of Civil Appeals withdrew the March 15th opinion and substituted it with the May 10th decision. We also note that after the substitute opinion was issued, the original DPS attorney withdrew from the case because she no longer worked for DPS.

7. Okla. Const. art. 7, § 7(a) provides:
 (a) The State shall be divided by the Legislature into judicial districts, each consisting of an entire county or of contiguous counties. There shall be one District Court for each judicial district, which shall have such number of District Judges, Associate District Judges and Special Judges as may be prescribed by statute. The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute. Existing electing districts for all who are or who become District Judges and Associate District Judges under the terms of this Article shall remain as they are constituted for the offices formerly held by such persons on the effective date of this Article, until changed by statute. The Legislature may at any time delegate authority to the Supreme Court to designate by court rule the division of the State into districts and the number of judges.
 Title 47 O.S. Supp.2006 § 6–211(a) provides:
 A. Any person denied driving privileges, or whose driving privilege has been canceled, denied, suspended or revoked by the Department, except where such cancellation, denial, sus-

I.

## TITLE 47 O.S. SUPP.2007 § 2–111 EXPRESSLY DEEMS PHOTOCOPIES OF DPS RECORDS TO BE CONSIDERED ORIGINALS FOR ALL PURPOSES AND ADMISSABLE AS EVIDENCE IN ALL COURTS. ALSO PURSUANT TO 12 O.S.2011 § 3004(3), A CERTIFIED COPY OF THE DPS ORDER WAS NOT REQUIRED.

### A.

 ¶ 8 DPS contends that unless Hedrick attached a certified copy of its order to his petition in the district court, his appeal could not be perfected in the trial court. It insists that the photocopy of DPS's revocation submitted with his petition to the district court was incompetent evidence because it was neither certified, nor submitted with a certificate, pursuant to 12 O.S.2011 § 3005 [9]

pension or revocation is mandatory, under the provisions of Section 6–205 of this title, or disqualified by the Department, under the provisions of Section 6–205.2 or 761 of this title, shall have the right of appeal to the district court as hereinafter provided. Proceedings before the district court shall be exempt from the provisions of the Oklahoma Pleading and Discovery codes, except that the appeal shall be by petition, without responsive pleadings. The district court is hereby vested with original jurisdiction to hear said petition.
The district court was vested with subject matter jurisdiction the moment Hedrick filed his petition in the trial court. *Oklahoma Dept. of Public Safety v. Robinson*, 1973 OK 80, ¶ 15, 512 P.2d 128.

8. Title 47 O.S. Supp.2006 § 6–211(F) provides:
 F. At a hearing on a revocation by the Department pursuant to the implied consent laws as provided in Sections 6–205.1, 753 and 754 of this title, the court shall not consider the merits of the revocation action unless a written request for an administrative hearing was timely submitted to the Department and the person actually exercised the opportunity to appear as provided in Section 754 of this title and the Department entered an order sustaining the revocation.

9. Title 12 O.S.2011 § 3005 provides:
 The contents of an official record or of a private record authorized to be recorded or filed in the public records and actually recorded or filed, if otherwise admissible, may be proved by a copy in perceivable form, certified as

or 12 O.S.2011 § 2902.[10] Hedrick argues that the copy he attached to his district court petition need not be a certified copy. He relies on an exception to these requirements, found at 12 O.S.2011 § 3004(3), which provides in pertinent part:

The original is not required, and a duplicate or other evidence of the contents of a record is admissible if:

. . . .

3. At a time when an original was under the control of the party against whom offered, the party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearings and the party does not produce the original at the hearing. . .

Although neither party mentions 47 O.S. Supp.2007 § 2–111, we take judicial notice of the statute[11] which provides in pertinent part:

C. 1. The Commissioner may cause any or all records kept by the Department of Public Safety to be photographed, microphotographed, photostated, reproduced on film, or stored on computer storage medium. The film or reproducing material shall be of durable material, and the device used to reproduce the records on the film or reproducing material shall accurately reproduce and perpetuate the original records in all detail.

**2. The photostatic copy, photograph, microphotograph, photographic film or computerized image of the original records shall be deemed to be an original record for all purposes and shall be admissible as evidence in all courts or administrative agencies. A facsimile, exemplification, or certified copy thereof shall be deemed to be a transcript, exemplification, or certified copy of the original.** (Emphasis supplied.)

### B.

¶ 9 The trial court is required to examine all of the records in a DPS file relative to an offense committed.[12] Section 2–111 clearly and unambiguously declares photocopies of DPS records to be considered originals and admissible in any court. Applying this statute could end our inquiry but this is not the only dispositive statute applicable to this cause. Revocation appeal proceedings in the district court are exempt from the provision of the Oklahoma Pleading and Discovery

---

correct in accordance with Section 2902 of this title or testified to be correct by a witness who has compared it with the original. If a copy which complies with this section cannot be obtained by the exercise of reasonable diligence, other evidence of the contents may be admitted.
Because this statute remains unchanged since 2002, references are to the current version.

**10.** Title 12 O.S.2011 § 2902 provides in pertinent part:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
1. A document bearing a seal purporting to be that of the United States or of any state, district, commonwealth, territory or insular possession thereof, including the Panama Canal Zone, or the trust territory of the Pacific Islands, or of a political subdivision, department, office or agency thereof, and a signature purporting to be an attestation or execution;
2. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph 1 of this section, having no seal, if a public officer having a seal and having official duties

in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine;
. . . .
4. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph 1, 2 or 3 of this section or complying with any statute or by rules prescribed by the Supreme Court pursuant to statutory authority;
Because this statute remains unchanged since 2002, references are to the current version.

**11.** Title 12 O.S.2011 § 2201 provides in pertinent part;
A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States. . . .

**12.** Title 47 O.S. Supp.2006 § 6–211(I) see note 5, supra. See also, 47 O.S. Supp.2005 § 2–110 see note 5, supra.

codes, but they are not exempt from the Oklahoma Evidence Code.[13] The requirements of 12 O.S.2011 § 3004(3) which are applicable here specifically allow admission of duplicates, or other secondary evidence, to prove the contents of a document, when the original document is:

1) under the control of the party against whom it is offered;

2) the party was put on notice by the pleadings or otherwise that the contents would be a subject of proof at the hearings; and

3) the party does not produce the original at the hearing.[14]

¶ 10 Title 12 O.S.2011 § 3004, which is identical to Rule 1004 of the Federal Rules of Evidence, carves out specific exceptions to the normal rules of admissibility under the evidence code.[15] These requirements have been met in this cause because: 1) the original DPS revocation order was in the possession of DPS, against whom it was to be proffered; 2) DPS was put on notice by Hedrick's pleading that the contents of the revocation order would be a subject of proof

at the hearing in the trial court; and 3) DPS did not produce the original at the hearing or any other time.

¶ 11 Title 12 O.S.2011 § 3004 does not require that a duplicate be certified if the necessary conditions are satisfied, nor does it recognize any degree of secondary evidence, such as first requiring a direct copy.[16] The reason a certified copy is not required under this rule is because DPS has the original in their possession. If the authenticity of the copy is questioned they can easily introduce the original as proof.[17]

¶ 12 This rule has long been a settled issue under Oklahoma law. Interpreting a prior incarnation of this rule in *Security State Bank v. Lane*, 1917 OK 263, ¶ 3, 64 Okla. 11, 166 P. 160, we held:

> In these circumstances the copy of the demand was admissible in evidence under the rule governing the admission of exhibits attached to pleadings and made a part thereof. Moreover, where, as in this and similar cases, the original paper is necessarily in the hands of the defendant, notice

**13.** Title 47 O.S. Supp.2006 § 6–211(A) provides:
> A. Any person denied driving privileges, or whose driving privilege has been canceled, denied, suspended or revoked by the Department, except where such cancellation, denial, suspension or revocation is mandatory, under the provisions of Section 6–205 of this title, or disqualified by the Department, under the provisions of Section 6–205.2 or 761 of this title, shall have the right of appeal to the district court as hereinafter provided. Proceedings before the district court shall be exempt from the provisions of the Oklahoma Pleading and Discovery codes, except that the appeal shall be by petition, without responsive pleadings. The district court is hereby vested with original jurisdiction to hear said petition.

While this provision specifically exempts proceedings of this type from the Pleading and Discovery Codes, it is silent on the application of the Evidence Code. Additionally, this court stated in *Oklahoma Dept. of Pub. Safety v. Robinson,* see note 4, supra:
> Although the hearing for revocation of a drivers license is an administrative proceeding, when the order of the commissioner is appealed to the district court it becomes a judicial proceeding. Any evidence sought to be introduced must conform with judicial standards.

DPS relies on *Robinson* in arguing that a photo copy was insufficient because a police officer's uncertified affidavit was not allowed in *Robinson* as admissible. The affidavit did not fall under

the exceptions of 12 O.S.2011 § 3004(3), nor did *Robinson* address its applicability to DPS proceedings.

**14.** Title 12 O.S.2011 § 3004(3) see note 4, supra.

**15.** 7 Okla. Prac., Trial Practice § 17:3 (2009 ed.), provides in pertinent part:
> Even if § 3002 requires the proponent to introduce the original, § 3004 of the Oklahoma Evidence Code specifies "circumstances under which production of the original is excused" (quoting Fed.R.Evid. 1004, Adv. Comm. Note).

**16.** 7 Okla. Prac., Trial Practice § 17:3 (2009 ed.); Fed.R.Evid. 1004, Adv. Comm. Note.

**17.** See Fed.R.Evid. 1004(3), Adv. Comm. Note, explaining the provision of the Federal Rules of Evidence identical to 12 O.S.2011 § 3004(3), which provides:
> A party who has an original in his control has no need for the protection of the rule if put on notice that proof of contents will be made. He can ward off secondary evidence by offering the original. The notice procedure here provided is not to be confused with orders to produce or other discovery procedures, as the purpose of the procedure under this rule is to afford the opposite party an opportunity to produce the original, not to compel him to do so.

to produce the same is not required to allow a copy to be given in evidence where the form of the action and the allegations of the pleadings are such as to give notice that the production will be necessary at the trial.

¶ 13 We revisited this rule in *Smith v. Arrow Drilling Co.*, 1942 OK 337, ¶ 19, 191 Okla. 381, 130 P.2d 95, where we held that it was not an error to receive into evidence a carbon copy of an instrument, material to the issues, where it was shown that the original was in the hands of the adverse party.

## II.

## THE APPEAL WAS NOT UNTIMELY.

■ ¶ 14 DPS argues that Hedrick's district court appeal was untimely because it must be filed within thirty days pursuant to 47 O.S. Supp.2006 § 6–211(E).[18] DPS argues that his petition was filed October 30, 2009, thirty-seven days after the order was mailed. The only evidence of this mailing date is found on the order itself, wherein it states the date it was mailed. Hedrick concedes that his petition must be filed within thirty days of service to him, but argues that DPS mailed the order through the United States mail and pursuant to 47 O.S. Supp.2007 § 2–116, when any notice is mailed by DPS, the notice is complete upon the expiration of ten days after it was mailed.

¶ 15 Section 2–116 provides:

Whenever the Department of Public Safety is authorized or required to give any notice under this act or other law regulating the operation of vehicles, unless a different method of giving such notice is otherwise expressly prescribed, such notice shall be given either by personal delivery thereof to the person to be so notified or by deposit in the United States mail of such notice in an envelope with first class postage prepaid, addressed to such person at the address as shown by the records of the Department. The giving of notice by mail is complete upon the expiration of ten (10) days after such deposit of said notice.

Proof of the giving of notice in either such manner may be made by the certificate of any officer or employee of the Department or affidavit of any person over eighteen (18) years of age, naming the person to whom such notice was given and specifying the time, place and manner of the giving thereof. Failure of the person to receive notice because of failure to notify the Department of a change in his or her current mailing address, as required by Section 6–116 of this title, shall not be sufficient grounds for the person to protest the notice.

Hedrick argues that his thirty day deadline did not begin to run until ten days after September 23, 2009—the date DPS mailed the order. Even though DPS does not dispute that it mailed the order to Hedrick, it insists this statute only comes into play in certain cases so that a presumption can be made that the notice would be received in, at most, ten days after mailing, but, without explanation, insists this is not one of those cases.

¶ 16 We disagree. When DPS follows the procedures authorized by 47 O.S. Supp.2007 § 2–116 and chooses to mail orders through the United States mail, it would be inconsistent with the statute to deny its application to extend the deadline for the person receiving the order through the mail to file an appeal with the district court. Hedrick had ten days after September 23, 2009, before his notice was considered complete. He filed his appeal on October 30, 2009. Hedrick's appeal was timely filed in the district court.

## CONCLUSION

¶ 17 Title 47 O.S. Supp.2007 § 2–111 clearly and unambiguously declares photocopies of DPS records to be considered originals and admissible in any court.[19] Even if it did not, the original DPS revocation order is in the possession of DPS. It mails, through the United States mail, copies of these orders to drivers whose licenses have been revoked. Pursuant to 12 O.S.2011 § 3004(3), a driver challenging the revocation is not required to

**18.** Title 47 O.S. Supp.2006 § 6–211(E), see note 4, supra.

**19.** Title 47 O.S. Supp.2007 § 2–111, see note 1, supra.

obtain a certified copy of the same order DPS mailed in order to file an appeal to the district court to put DPS on notice of its own decision.[20] If for any reason the authenticity of the copy is called into question, DPS has the original to introduce as proof.

¶ 18 This procedure is no different than that followed by this Court. When the Court of Civil Appeals issues an opinion, it is mailed through the United States mail by the Supreme Court Clerk to the parties. If a party wishes to file a petition for certiorari, the party must attach a photocopy of the Court of Civil Appeals opinion to the petition, but it need not obtain a certified copy from our Clerk before filing the petition for certiorari. If the authenticity of the copy is called into question, the original is already in our possession via the Supreme Court Clerk.[21]

¶ 19 DPS is legislatively authorized to mail orders through the United States mail pursuant to 47 O.S. Supp.2007 § 2–116. When it does, notice is not complete until 10 days after the order is mailed.[22] Once notice is complete, a driver has thirty days to file an appeal to the district court.[23]

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, WINCHESTER, TAYLOR, COMBS, GURICH, JJ., concur.

EDMONDSON, J., concurs in result (by separate writing).

EDMONDSON, J., Concurring In Result, and with GURICH, J., who Concurs with the Opinion of the Court and joins the separate writing by EDMONDSON, J.

### I. Introduction

¶ 1 I concur in the result of the Court's opinion which requires the District Court to hear Appellant's appeal on remand. I agree with the Court's opinion concerning application of the Evidence Code and the timeliness of the District Court appeal. However, I decline to join the Court's opinion because it leaves unaddressed public law issues that are briefed by the parties. These issues involve a *fundamentally flawed* District Court procedure that is not corrected by the Court's opinion and will no doubt be continued on remand after this Court's silence on these issues. *This Court simply cannot remain silent when a state agency expressly advocates in this Court that the agency may revoke a state license deserving due process protection by utilizing a trial by ambush in a District Court.*

¶ 2 Appellant's Brief-in-chief identifies the "Issues Under Review" and includes "Whether the lower court improperly shifted the burden of proof onto Appellant," and his brief contains argument on whether he had the burden to prove service of his petition for appeal of the revocation of appellant's driver's license.[1] His brief also contains argument that he should have been given an opportunity to present evidence for a modification of his revocation. The Court's opinion points out that the Department of Public Safety (DPS) argues that the burden of producing part of the administrative record is upon Appellant. The Court's opinion notes that the District Court is *required* to examine the administrative record, but has no discussion on which party has the burden to provide the record, or its parts, to the District Court.

¶ 3 A case was presented to this Court in 1990 with the issue whether the district court erred by failing to vacate a driver's license revocation order because it was not founded on administrative documentation that met the standards mandated by the governing

---

**20.** Title 12 O.S.2011 § 3004(3) see note 4, supra

**21.** Much like this Court takes judicial notice of orders on the dockets of the District Courts and Appellate Courts, the trial court could have taken notice of the DPS revocation order. *See,* 12 O.S.2011 § 2201, note 11, supra; *Collier v. Reese,* 2009 OK 86, ¶ 8, fn. 7, 223 P.3d 966. *See also, State ex rel. Oklahoma State Board of Examiners of Certified Shorthand Reporters v. Parrish,* 2006 OK 91, ¶ 7 fn. 1, 152 P.3d 202; *Mehdipour v. State ex rel. Department of Corrections,* 2004 OK 19, ¶ 7 fn. 15, 90 P.3d 546; *Myers v. Lashley,*

2002 OK 14, ¶ 5, fn. 8, 44 P.3d 553. The District Court is required to consider and examine DPS records, see discussion note 3, supra.

**22.** Title 47 O.S. Supp.2007 § 2–116, see page 9, supra.

**23.** Title 47 O.S. Supp.2006 § 6–211(E), see note 4, supra.

**1.** Appellant's Brief-in-chief at pp. 1, 2, & 7–8.

statute.[2] We explained in that case that we had granted certiorari "to provide guidance on an important, first-impression question of public law." [3]

¶4 In the present controversy the DPS argues in its appellate brief that it is not required to provide any particular documents from the administrative record to the District Court unless the DPS decides to use them, *and that the DPS is not merely allowed, but statutorily required, to engage in a trial by surprise or ambush when the parties appear in the District Court trial de novo.* The parties' briefs present issues on burden of proof and the use of the administrative record by the District Court in the context of a trial by ambush. While Appellant does not take issue with a trial by ambush, he does object to how the DPS allocates burdens of proof.

¶5 Whether the parties possess certain burdens of proof and whether a trial by ambush is a required procedure for a District Court present not merely public versus private law issues, but issues that are of immediate concern to the orderly administration of justice, and they are issues *publici juris.* These *publici juris* issues of public law are squarely before us for resolution, and like our opinion in 1990 the Court must not remain silent, but "provide guidance on an

important, first-impression question of public law."

¶6 In summary, all of the questions in this appeal ultimately center on which party has a burden to produce certain records for the District Court review and the form those records should take when they are produced. I agree with the Court's opinion that the District Court's order must be reversed because it is erroneous as a matter of law and unsupported by a required evidentiary foundation.[4] However, my resolution of the issues before us requires the DPS to place the DPS administrative record in the District Court proceeding, and Appellant may rely upon documents appearing in that record to show appropriateness and timeliness of his District Court petition.

## II. Administrative Record and Burdens of Proof

¶7 The first two issues are (1) the *scope of the administrative record* to be produced in the District Court and *(2) a party's burden to produce that record.* For example, DPS argued that *those portions of the administrative record* introduced as exhibits *by either party constitute the administrative record* before the District Court.[5] The scope of the record to be produced is determined by the language in 47 O.S.2011 § 6–211(I).[6] That paragraph states as follows:

A. Any person denied driving privileges, or whose driving privilege has been canceled, denied, suspended or revoked by the Department, except where such cancellation, denial, suspension or revocation is mandatory, under the provisions of Section 6–205 of this title, or disqualified by the Department, under the provisions of Section 6–205.2 or 761 of this title, shall have the right of appeal to the district court as hereinafter provided. Proceedings before the district court shall be exempt from the provisions of the Oklahoma Pleading and Discovery codes, except that the appeal shall be by petition, without responsive pleadings. The district court is hereby vested with original jurisdiction to hear said petition.

B. A person whose driving privilege is denied, canceled, revoked or suspended due to inability to meet standards prescribed by law, or due to an out-of-state conviction or violation, or due to an excessive point accumulation on the traffic record, or for an unlawful license issued, may appeal in the county in which the person resides.

C. Any person whose driving privilege is canceled, denied, suspended or revoked may appeal to the district court in the county in which the

---

2. *Chase v. State ex rel. Dept. of Public Safety,* 1990 OK 78, 795 P.2d 1048.

3. *Chase v. State ex rel. Dept. of Public Safety,* 795 P.2d at 1049.

4. *Hollis v. State ex rel. Dept. of Public Safety,* 2008 OK 31, n. 4, 183 P.3d 996, 999 ("Unless the lower court's rulings are found to be erroneous as a matter of law, or unsupported by evidentiary foundation, the appellate courts will not disturb the findings made.").

5. *See, e.g.,* Appellant's Brief in Chief, at p. 5., "Appellee [DPS] refused to provide these [DPS] records to the trial court." *See, e.g.,* Appellee's Answer Brief, at pp. 11–12, "If Plaintiff desired any records of the Department of Public Safety to use as trial exhibits, he had the ability to make a request through the Records Division of the Department of Public Safety.... The statute requires the trial court to examine all the records on file with the Department of Public Safety that are submitted as evidence by either party."

6. 47 O.S.2011 § 6–211:

offense was committed upon which the Department based its order.

D. A person whose driving privilege is revoked or denied or who is denied a hearing pursuant to Section 753 or 754 of this title may appeal to the district court in the county in which the arrest occurred relating to the test refusal or test result, as shown by the records of the Department.

E. The petition shall be filed within thirty (30) days after the order has been served upon the person, except a petition relating to an implied consent revocation shall be filed within thirty (30) days after the Department gives notice to the person that the revocation is sustained as provided in Section 754 of this title. It shall be the duty of the district court to enter an order setting the matter for hearing not less than fifteen (15) days and not more than thirty (30) days from the date the petition is filed. A certified copy of petition and order for hearing shall be served forthwith by the clerk of the court upon the Commissioner of Public Safety by certified mail at the Department of Public Safety, Oklahoma City, Oklahoma.

F. At a hearing on a revocation by the Department pursuant to the implied consent laws as provided in Sections 6–205.1, 753 and 754 of this title, the court shall not consider the merits of the revocation action unless a written request for an administrative hearing was timely submitted to the Department and the person actually exercised the opportunity to appear as provided in Section 754 of this title and the Department entered an order sustaining the revocation.

G. Upon a hearing relating to a revocation or disqualification pursuant to a conviction for an offense enumerated in Section 6–205, 761, or 6–205.2 of this title, the court shall not consider the propriety or merits of the revocation or disqualification action, except to correct the identity of the person convicted as shown by records of the Department.

H. In the event the Department declines to modify, as provided in Section 754.1 of this title, a revocation order issued pursuant to Section 753, Section 754, paragraph 2 of subsection A of Section 6–205 or Section 6–205.1 of this title, which is subject to modification pursuant to Section 11–906.4 of this title or Section 6–205.1 of this title, a petition for modification may be included with the appeal or separately filed at any time, and the district court may, in its discretion, modify the revocation as provided for in Section 755 of this title; provided, any modification under this subsection shall apply to Class D motor vehicles only.

I. The court shall take testimony and examine the facts and circumstances, including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of the person, and determine from the facts, circumstances, and records whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department. The court may also determine whether or not, from the person's previous driving record, the order was for a longer period of time than such facts and circumstances warranted. In case the court finds that the order was not justified, the court may sustain the appeal, vacate the order of the Department and direct that driving privileges be restored to the petitioner, if otherwise eligible. The court may, in case it determines the order was justified, but that the period of the suspension or revocation was excessive, enter an order modifying the same as provided by law.

J. The testimony of any hearing pursuant to this section shall be taken by the court stenographer and preserved for the purpose of appeal and, in case the Department files notice of appeal from the order of the court as provided herein, the court shall order and direct the court clerk to prepare and furnish a complete transcript of all pleadings and proceedings, together with a complete transcript taken at said hearing at no cost to the Department, except the cost of transcribing.

K. In order to stay or supersede any order of the Department, the petitioner may execute and file a cash appeal bond in the sum of Two Hundred Fifty Dollars ($250.00) with the clerk of the court, to be approved by the court clerk. A certified copy of the bond shall be served along with the notice of hearing and petition.

The bond shall be to the State of Oklahoma and conditioned that the petitioner will prosecute the appeal with due diligence and during pendency of the appeal abide by and not violate any of the laws of this state or any other state in the operation of a motor vehicle, and that the petitioner will abide by and perform the final judgment of the court therein, and in case the appeal is finally denied the appellant will pay all court costs incurred in the appeal in the district court. If the petitioner is convicted of a traffic offense during the pendency of the appeal or fails to prosecute the appeal with due diligence, the bond may be forfeited to the court fund upon application by the Department and after hearing before the court in which the appeal is pending.

L. After filing and approval of the appeal bond and the furnishing thereof to the Department as hereby provided, the Department shall restore driving privileges to the person if otherwise eligible, and the person shall be permitted to operate a motor vehicle pending the appeal, under terms and conditions as prescribed in the bond which shall include the installation of an ignition interlock device on every motor vehicle operated by the person, pursuant to Section 754.1 or 755 of this title, if the person was denied modification pursuant to any provision of paragraph 2 of subsection A of Section 6–205 or Section 6–205.1, 753 or 754 of this title; provided, however, if the order of the Department is sustained in final judgment, the court shall, in such final judgment, enter an order extending the period of suspension or revocation for such time as the petitioner was permitted to operate motor vehicles under the provisions of an appeal bond, and the court shall also in such final judgment direct and require the immediate sur-

I. The court shall take testimony and examine the facts and circumstances, including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of the person, and determine from the facts, circumstances, and records whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department. The court may also determine whether or not, from the person's previous driving record, the order was for a longer period of time than such facts and circumstances warranted. In case the court finds that the order was not justified, the court may sustain the appeal, vacate the order of the Department and direct that driving privileges be restored to the petitioner, if otherwise eligible. The court may, in case it determines the order was justified, but that the period of the suspension or revocation was excessive, enter an order modifying the same as provided by law.

This language clearly states that the trial court "**shall** ... **examine** ... **all of the records on file** in the office of the Department of Public Safety **relative to the offense committed and the driving record of the person** ... [and] **may also determine** ... from the person's previous driving record,[if] the [DPS] order was for a longer period of time than such facts and circumstances warranted." *Id.* 47 O.S. § 6–211(I) (material omitted and emphasis added). In 1984, we noted this language and observed that the "[District] [C]ourt is **mandated** 'to examine into' the 'facts and circumstances' relative to the offense committed." [7]

¶ 8 **In summary,** if this language in § 6–211(I) is considered in context with (1) the language in other paragraphs of § 6–211 and (2) several appellate court opinions, then § 6–211(I) describes a mandatory duty [8] of the District Court to examine all of the records of DPS relative to the offense and driving record, **and DPS has the burden to either file a certified copy of the record with the Clerk of the District Court for its incorporation into the record of that court, or to introduce this record at the District Court hearing.** Further, if any part of the administrative record, including the person's previous driving record which the District Court **may** also consider, was not filed or introduced by the DPS, then the party challenging the DPS ruling may file or introduce any portion of that record with the District Court if he or she wants that court to consider it as part of its decision.

¶ 9 The appeal to the District Court is initiated by the person whose driving privileges have been canceled, denied, suspended or revoked. This person files a petition in the District Court and the Pleading and Discovery Codes do not apply. 47 § 6–211(A). The petition serves to invoke the original subject matter jurisdiction of the District Court to hear the petition. *Id.* This paragraph also states that this appeal "shall be ... without responsive pleadings." *Id.*

¶ 10 If no responsive pleadings are filed, then how are the legal and fact issues presented for the District Court to examine? The unique interpretation by the DPS is that both parties appear for the hearing and make their arguments with whatever supporting documents they desire to produce, and that a "trial by ambush" or surprise occurs because neither side knows with certainty what the other will argue or what evidentiary materials they will produce. [9] The DPS combines

---

render of any driver license or licenses to the Department.

M. An appeal may be taken by the person or by the Department from the order or judgment of the district court to the Supreme Court of the State of Oklahoma as otherwise provided by law.

7. *Cascio v. State ex rel. Dept. of Public Safety,* 1984 OK 30, 686 P.2d 282, 284 (emphasis and explanatory word added).

8. The word "shall" is ordinarily interpreted as implying a command or mandate and "may"

generally denotes permissive or discretional authority. However, a directory rather than mandatory construction may be given to the word "shall" *upon a finding of strongly persuasive contrary legislative intent. Howard v. Zimmer,* 2013 OK 17, n. 24, 299 P.3d 463, 469 (emphasis added).

9. "These implied consent appeals are a lot like the old 'trial by ambush' that existed prior to the Pleading and Discovery Codes. The Defendant is often surprised at trial by Plaintiff in these proceedings with unexpected exhibits, witnesses,

this view with an indication that the appellant has the initial burden to prove error on the part of the DPS, and the DPS need only produce a record when forensically necessary to challenge the appellant's claims.[10] This Court should expressly reject this view by the DPS, and explain that a "trial by surprise" is not the procedure for a trial de novo.

¶ 11 The simple answer for why no responsive pleadings are filed by the DPS is that (1) the DPS has the *initial* burden in District Court to show that its administrative decision was correct via a de novo showing of evidence (including the administrative record), and (2) the Legislature was of the opinion that the DPS record itself could be sufficient *for presentation of facts* in some circumstances when, for example, only questions of law are raised in the District Court appeal, and a District Court could sustain or vacate the DPS order using unchallenged facts appearing on the DPS record.

¶ 12 A District Court review of a driver's license revocation is conducted *de novo* with a trial on both the law and the facts.[11] Since 1975 our Court of Civil Appeals has explained that during this trial on both law and facts the DPS has the *initial* burden to show that driving privileges that were previously granted to a driver should now be canceled, denied, suspended or revoked.[12] Our 1976 opinion in *Peters v. Oklahoma Dept. of Public Safety* affirmed a District Court order which had reversed a license suspension and found that the evidence submitted by DPS failed to meet the preponderance-of-evidence standard.[13] In 2008, we again noted that in a District Court hearing the DPS's burden of proof is measured by a preponderance of the evidence.[14] Although the DPS has an initial burden of proof for a driving privilege to be canceled, denied, suspended or revoked, the driver may bear a burden of proof depending upon the matter to be proved, such as a burden of showing an incapacity to refuse or submit to the test for alcoholic blood content.[15]

claims and legal arguments." Appellee's Answer Brief at p. 8.

10. For example, when the DPS addresses the requirement of 47 O.S. § 6–211(I) that the District Court examine all records on file with the Department, it argues that it need not produce the administrative record because: "It is not the responsibility of Defendant's attorney to help Plaintiff make his case." Appellee's Answer Brief at p. 12.

11. Appeal of Dungan, 1984 OK 21, 681 P.2d 750, 752 ("Appeals from implied consent revocation orders are heard de novo in the district court, with the 'trial de novo' being a trial of the entire case anew, both on the law and on the facts."); *Matter of Braddy*, 1980 OK 44, 611 P.2d 235, 237–238 ("Appeals from Implied Consent revocation orders are heard de novo in the district court ... A trial de novo is a trial of the entire case anew, both on law and on facts.") (citations omitted).

12. *See, e.g., Appeal of Tucker*, 1975 OK CIV APP 40, 538 P.2d 626, 629 ("Appellant [DPS] carries the burden and must prove by a 'preponderance of the evidence' that appellee 'had been driving ... while under the influence.'") (released for publication by order of the Court of Civil Appeals); *Burris v. State, ex rel. Dept. of Public Safety*, 1989 OK CIV APP 64, 785 P.2d 332, 335 ("It is not necessary for the State to prove that the Appellant in fact was under the influence of intoxicants, only that the officer had reasonable

grounds to believe so.") (released for publication by order of the Court of Civil Appeals); *Collins v. State ex rel. Dept. of Public Safety*, 1999 OK CIV APP 107, ¶ 4, 991 P.2d 557, 559 ("At that de novo hearing, DPS has the burden of proving that the licensee had been driving under the influence of alcohol.") (released for publication by order of the Court of Civil Appeals); *Hollis v. State ex rel. Department of Public Safety*, 2006 OK CIV APP 25, 131 P.3d 145, 146 ("To prove revocation is proper based on a licensee's refusal to submit to a breath or blood test, the State must prove the following four elements by a preponderance of the evidence....") (released for publication by order of the Court of Civil Appeals).

13. *Peters v. Oklahoma Dept. of Public Safety*, 1976 OK 183, 557 P.2d 908, 909, 910 ("Evidence in support of the Department's claim Peters refused to submit to the test was found short of meeting the preponderance of the evidence test ... We agree with the trial court.").

14. *Hollis v. State ex rel. Dept. of Public Safety*, 2008 OK 31, ¶ 9, 183 P.3d 996, 998.

15. *See, e.g., Hollis v. State ex rel. Dept. of Public Safety, supra*, 2008 OK 31, at ¶ 16, 183 P.3d at 1000 ("Because Hollis failed to provide sufficient credible evidence that he was mentally incapable of giving a knowing and conscious refusal [to the test], the decision of the district court is reversed and remanded to affirm the revocation of Hollis' driving privileges.").

¶ 13 Our characterization of the District Court proceeding as de novo is a correct shorthand label because that court takes testimony, makes determinations of fact, **and uses the record of the administrative proceeding.**[16] Again, this Court has described the District Court proceeding as a trial de novo. *Matter of Braddy, supra.* We have explained that a trial de novo has a well-defined and generally understood meaning; it does not contemplate the framing of new and different issues in the appellate court, but requires that appeals be tried upon the original papers and upon the same issues as had below, the term "de novo" meaning "anew," "a second time." [17] We have also said that a trial de novo is a complete examination of all issues, both law and fact, and the cause is adjudicated as if it had never been previously adjudicated.[18] In both types of trial de novo, (1) a trial on original evidence and original issues, and (2) a trial on all evidence and issues presented regardless of their presentation in the first proceeding, the burdens of proof allocated to the parties do not change from the first trial to the trial de novo. This is because a burden of proof as to any particular fact rests upon the party asserting such fact,[19] and a trial de novo does not alter this principle.[20]

¶ 14 May the District Court consider facts that do not appear on the face of the administrative record? Of course it may because the District Court is required to **take testimony** and examine the facts and circumstances **"including all** of the [DPS] records." 47 O.S. at § 6–211(I) (emphasis added). The term "including" when describing the administrative record is used in an accumulative or additive sense [21] because what precedes it in the sentence is a reference to testimony **taken in the District Court** and not to testimony that is "included" in the administrative record.[22]

¶ 15 This conclusion is supported by the Legislature's apparent reaction to *Sipes v. State ex rel. Department of Public Safety,* 1997 OK CIV APP 82, 950 P.2d 881.[23] In *Sipes v. State ex rel. Department of Public Safety, supra,* our Court of Civil Appeals

16. 47 O.S. § 6–211(I): "The court shall take testimony and examine the facts and circumstances ... and determine from the facts...."

17. See *Gould v. Smith,* 1965 OK 112, 405 P.2d 82, 85, quoting *Ex parte Morales,* 53 S.W. 107, 108 (Tex.Cr.App.1899).

18. *Hargrave v. Tulsa Bd. of Adjustment,* 2002 OK 73, ¶ 6, 55 P.3d 1088, 1091, quoting *Vinson v. Medley,* 1987 OK 41, 737 P.2d 932, 938 ("[The statute] required the district court to conduct a trial *de novo* ... 'There must be a complete examination of all issues, both of fact and law. The cause stands as if it has never been resolved before.' ").

19. *Colton v. Huntleigh USA Corp.,* 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073

20. *See, e.g., Hargrave v. Tulsa Bd. of Adjustment,* 2002 OK 73, at ¶ 6, 55 P.3d at 1091, the Court noted that a party's burden of proof at the district court trial de novo did not change from the party's burden of proof before the board of adjustment.

21. The word "including" may be used to classify an item that follows "including" as a part of the class of items which preceded the word. The word "including" may also be used as a term of enlargement to add an item to the class mentioned in the sentence and appearing before the word "including." *See, e.g., Maben v. Rosser,* 1909 OK 211, 24 Okla. 588, 103 P. 674 ("including" may be defined as classifying that which follows the term with that which has gone before, and in an accumulative sense that makes what follows the term in addition to that which has preceded the term); *Argosy Limited v. Hennigan,* 404 F.2d 14, 20 (5th Cir.1968) ("The word 'includes' is usually a term of enlargement, and not of limitation."); *Montello Salt Co. v. State of Utah,* 221 U.S. 452, 464–465, 31 S.Ct. 706, 55 L.Ed. 810 (1911) ("It [including] may have the sense of addition, as we have seen, and of 'also;' but, we have also seen, 'may merely specify particularly that which belongs to the genus.' ").

22. If the Legislature had intended the testimony in the District Court to be a mere repetition of testimony in the administrative proceeding that was incorporated in the administrative record, then the term "including" would not have been followed by the term "all" which describes the sum total of the administrative record and not a kind of testimony. The Legislature would have instead specified that the administrative testimony was the testimony to be taken anew in the District Court if it had not wanted "including" to be given an additive meaning.

23. *Sipes* was released for publication by order of the Court of Civil Appeals. Opinions released for publication by the Court of Civil Appeals have persuasive effect, but are not precedential. *Tubbs v. State ex rel., Teachers' Retirement System of Okla.,* 2002 OK 79, n. 7, 57 P.3d 571, 575.

stated that in cases of refusal to submit to a blood test "the licensee may not present new evidence but must prove that the evidence adduced by DPS at the administrative level is facially deficient to satisfy the relevant statutory requirements." *Id.* at 884. The court's conclusion was based upon a 1988 amendment to § 6–211(A), then in effect, which stated that: "... the district court is hereby vested with appellate jurisdiction and shall hear said petition de novo" when hearing the case of an appeal from a driver license revocation under the implied consent laws. *Id.* The appellate court noted the difference between "original" and "appellate" jurisdiction and the Legislature's use of the latter term. Shortly after the 1997 opinion the Legislature amended 47 O.S. § 6–211, deleting the "appellate jurisdiction" application for driver license revocation appeals under the implied consent laws, and keeping the statutory language stating that a District Court had "original jurisdiction" in an appeal pursuant to § 6–211.[24] The Oklahoma Legislature, apparently in response to the *Sipes* holding,[25] amended § 6–211 so that facts outside the administrative record could be considered in the District Court appeal of a revocation under the implied consent laws.

¶ 16 May the District Court consider a legal issue raised by a party that does not also appear on the face of the administrative record? In summary, yes it may. *Sipes* is noteworthy because it relied upon one of the well-known general principles of appellate jurisdiction and procedure that a record on appeal constitutes the facts used by an appellate court when adjudicating an appeal,[26] and it applied this principle to the meaning of statutory language then in effect. Another well-known general principle of appellate procedure is that legal issues adjudicated on appeal are those which were raised "either directly or by implication" in the lower tribunal.[27] Raising an issue either directly or indirectly in the DPS administrative adjudication would include not only those issues actually raised by parties and adjudicated, but also those fairly comprised by the issues actually raised and the nature of the adjudication,[28] as well as the mandatory legal re-

**24.** 1999 Okla. Sess. Laws, Ch. 139 § 3 (eff.Nov.1, 1999). *See also Davis v. State ex rel. Dept. of Public Safety,* 2001 OK CIV APP 154, ¶ 15, 37 P.3d 974, 978 (released for publication by order of the Court of Civil Appeals) ("In amending § 6–211(A), the legislature expanded the scope of district court review by striking the reference to 'appellate' jurisdiction in implied consent matters and vesting the district courts with 'original' jurisdiction.").

**25.** *In the Matter of Baby Boy L.,* 2004 OK 93, ¶ 16 103 P.3d 1099, 1105 (The Court noted that within two years of a decision of this Court "the Oklahoma Legislature, apparently in response to our opinions" and in recognition of the teaching from a U.S. Supreme Court opinion, amended an Oklahoma statute.); *White v. Heng Ly Lim,* 2009 OK 79, ¶ 16, 224 P.3d 679, 685 (Legislature's intent in amending a statute may be ascertained by looking to the circumstances surrounding the amendment).

**26.** *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721, 723–724 ("This court may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court, nor may a deficient record be supplemented by material physically attached to a party's appellate brief."); *Cumbey v. State,* 1985 OK 36, 699 P.2d 1094, 1099 ("A trial court's record constitutes the only means for communication of its proceedings to an appellate court.").

**27.** *Wilson v. Levy,* 1929 OK 457, 140 Okla. 74, 282 P. 679, 681–682, quoting *State Nat. Bank v. Lokey,* 1925 OK 792, 112 Okla. 82, 240 P. 101, 103 ("Where a proposition of law is not raised in the trial court either directly or by implication, and no objection or exception made or saved, there is nothing for this court to review, and the question cannot be presented in this court for the first time.").

**28.** For certain purposes, an issue may be fairly comprised in a different issue that is expressly presented, or in a particular claim made by a pleading, or in a request for judicial relief, or when a necessary part of a particular adjudication requires adjudication of the fairly comprised issue because that issue is within the evidentiary record before the tribunal on its decision. *See, e.g., Burrell v. Burrell,* 2007 OK 47, n. 11, 192 P.3d 286, 289 ("An argument need not be artfully drawn as long as it is fairly comprised within the pleadings presented to the trial court."); *Smedsrud v. Powell,* 2002 OK 87, n. 37, 61 P.3d 891, 899 ("Before summary judgment may be given, the trial court is 'not only authorized but [indeed] required to rule out all theories of liability fairly comprised within the evidentiary materials before [it].'"); *Slagell v. Slagell,* 2000 OK 5, ¶ 8, 995 P.2d 1141, 1142 (points of law identified during hearing on motion for new trial may be reviewed on appeal since those points of law were fairly comprised in the general allegations

quirements the DPS must satisfy *and, on direct District Court review, affirmatively show on the face of the administrative record* when denying, suspending, revoking or canceling a license.[29] However, just as the District Court § 6–211 trial de novo is not limited to those facts appearing on the administrative record, the trial de novo is not limited to those legal issues raised by the parties and appearing on the administrative record. The Legislature's removal of language referring to "appellate jurisdiction" while retaining "original jurisdiction" for describing the proceeding in the District Court shows that the Legislature wants the District Court proceeding to be treated as an appeal on the record of the lower tribunal with an opportunity for additional facts and legal issues raised in the District Court.

¶ 17 This issue is raised by the DPS in its brief when it cites a federal appellate opinion for the proposition that "Plaintiff has the burden of proving the subject matter jurisdiction requirement of exhaustion of administrative remedies by competent evidence."[30] The DPS's reliance on this authority raises two issues. The first is exhaustion of administrative remedies and its application requiring issues to be first presented to the admin-

istrative agency for resolution. The second involves the DPS's claim that proof of the exhaustion is a *jurisdictional burden of proof* that Appellant failed to meet in the District Court, so that the order of the District Court must be affirmed on appeal.

¶ 18 The exhaustion of administrative remedies principle ordinarily requires a plaintiff to pursue all available administrative relief before bringing a court action.[31] There are several reasons for a *judicial rule* requiring exhaustion of administrative remedies, and we have noted that judicial efficiency is served when parties develop the material facts in the administrative proceeding and administrative factfinding results.[32] This development of the facts is necessarily linked to the legal issues and claims presented for exhaustion in the administrative hearing. Of course, while development of an administrative record of facts *may* be necessary to support the application of legal issues, some legal issues are not subject to the exhaustion requirement because the issues are beyond the cognizance of the administrative body[33] or particular circumstances do not require exhaustion of the issues.[34]

¶ 19 The DPS's appellate brief argues that the District Court had no jurisdiction be-

of the motion for new trial); *Whig Syndicate, Inc. v. Keyes*, 1992 OK 95, 836 P.2d 1283 1287 (issues raised on certiorari that were fairly comprised within the determination of the intermediate appellate court's decision were properly before the Supreme Court).

**29.** *Chase v. State ex rel. Dept. of Public Safety*, 1990 OK 78, 795 P.2d 1048, 1050 & n. 9 ("This patent deficiency [on the face of the administrative proceedings] in the statutorily required DPS material does indeed make the Department's revocation order *vulnerable to invalidation, on timely appeal, for failure to meet the minimum legislatively prescribed standards for the DPS paperwork on which its administrative action must be rested.*") (emphasis in original and explanatory material from note 9 added).

**30.** Appellee's Answer Brief, at p. 3.

A federal court's allocation of a burden on a plaintiff to show subject matter jurisdiction does not necessarily show a burden for a plaintiff invoking jurisdiction of an Oklahoma District Court. *Colton v. Huntleigh USA Corp.*, 2005 OK 46, n. 4, 121 P.3d 1070, 1073 (Court explained that "an allocation of a burden of proof in state court relating to a particular type of jurisdiction

may, or may not, be analogous to federal court jurisprudence.").

**31.** *Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd.*, 2007 OK 21, ¶ 7, 158 P.3d 461, 464.

**32.** *Atkinson v. Halliburton Co.*, 1995 OK 104, 905 P.2d 772, 774–775.

**33.** *See, e.g., Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality*, 2002 OK 94, ¶ 9,61 P.3d 219, 223 (an administrative agency lacks power to adjudicate a legal issue presenting a constitutional question; however, if relief may be granted on non-constitutional grounds, the necessity of deciding constitutional issues may be avoided and exhaustion may be required).

**34.** *Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality*, 2002 OK 94, ¶ 10, 61 P.3d at 224 (Title 75 O.S.2001, § 306 of the APA provides an exception to the exhaustion rule, and "... is intended to apply only to rules issued by an agency in its quasi-legislative function and not to orders in individual proceedings in its quasi-adjudicative function."); *Walker v. Group Health Services, Inc.*, 2001 OK 2, ¶ 38, 37 P.3d 749, 762 ("Where administrative remedies are unavail-

cause Appellant failed to meet his burden of proof required by 47 O.S. § 6–211(F).

F. At a hearing on a revocation by the Department pursuant to the implied consent laws as provided in Sections 6–205.1, 753 and 754 of this title, the court shall not consider the merits of the revocation action unless a written request for an administrative hearing was timely submitted to the Department and the person actually exercised the opportunity to appear as provided in Section 754 of this title and the Department entered an order sustaining the revocation.

47 O.S.2011 § 6–211(F).

We have explained that administrative exhaustion of remedies is jurisdictional when the Legislature requires it and provides a legally effective administrative procedure and remedy for the type of relief sought by a claimant.[35] Paragraph "F" clearly states that the merits shall not be examined until the court determines that the licensee timely submitted a written request for a hearing, the licensee exercised his or her opportunity to participate in the hearing, and the DPS issued an order as a result of that hearing.

¶ 20 Subject matter jurisdiction is the "power to deal with the general subject involved in the action"[36] or the nature of the cause of action.[37] The Court has explained that subject matter jurisdiction of a court is invoked by pleadings filed with a court which show that the court has power to proceed *in a case of the character presented,* or power to grant the relief sought.[38] Appellant pled in his petition that he made a timely demand for an administrative hearing, that the DPS sustained the revocation, and that he exhausted his administrative remedies. Section 6–211(F) does not expressly state that performance of the administrative procedure is jurisdictional, or that proof of prior performance of the administrative procedure is for the purpose of obtaining or invoking District Court jurisdiction.[39] Section 6–211(F) is not defining or limiting the *character of the case* to be heard by the District Court. Instead, the limiting language "the court shall not consider the merits of the revocation action unless ..." appears to be either (1) mandatory language in the nature of the third element of jurisdiction[40] and a jurisdictional condition precedent "to the operation

able, ineffective or futile to pursue, the administrative process may be bypassed".).

35. *Atkinson v. Halliburton Co.,* 1995 OK 104, 905 P.2d 772, 774 ("It is a long established doctrine in Oklahoma that exhaustion of statutory remedies is a jurisdictional prerequisite for resort to the courts."); *Martin v. Harrah Independent School Dist.,* 1975 OK 154, 543 P.2d 1370, 1372 (Court stated rule and explained that it is only when a statutory administrative remedy is not adequate for the nature of the claim that failure to exhaust administrative remedies may be excused). Cf. *Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality,* 2002 OK 94, at ¶ 8, 61 P.3d at 223, (the Court noted that "In cases in which exhaustion of remedies is not required by statute, this Court has held that the requirement to exhaust administrative remedies is a prudential rule, rather than a jurisdictional bar."); *Apache Corp. v. State, ex rel. Oklahoma Tax Commission,* 2004 OK 48, ¶ 10, 98 P.3d 1061, 1064 (exhaustion of administrative remedies is a prudential rule when not required by statute, but when Legislature requires exhaustion of a remedy for obtaining a tax refund that remedy must be used).

36. *Hobbs v. German–American Doctors,* 1904 OK 60, 14 Okla. 236, 78 P. 356, 357; *Glacken v. Andrew,* 1918 OK 20, 69 Okla. 61, 169 P. 1096, 1097.

37. *Cooper v. Reynolds,* 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870).

38. *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 2011 OK 84, ¶ 47, 264 P.3d 1197, 1215; *State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck,* 1988 OK 38, 753 P.2d 1356, 1359.

39. *See State ex rel. Oklahoma Bar Association v. Mothershed,* 2011 OK 84, nn. 60–61, 264 P.3d 1197, 1217, where we noted examples of statutes that expressly state jurisdictional requirements.

40. *See State ex rel. Oklahoma Bar Association v. Mothershed,* 2011 OK 84, n. 60, 264 P.3d 1197, 1217, where we noted that in *Oklahoma Dept. of Securities ex rel. Faught v. Blair,* 2010 OK 16, n. 22, 231 P.3d 645, 658, we explained that the third element of jurisdiction, jurisdictional power to render the particular judgment, was raised by the arguments in the case which focused on whether the judgment sought or obtained violated mandatory law. *See, e.g., Gulfstream Petroleum Corp. v. Layden,* 1981 OK 56, 632 P.2d 376 (compulsory statutory requirement antecedent to judgment or final order must be fulfilled to satisfy third element of jurisdiction); *Abraham v. Homer,* 1924 OK 393, 102 Okla. 12, 226 P. 45, 48 (facts showing compliance with a procedural statute mandatorily required for a judgment are material to the existence of the power of the court to render that judgment).

of the statutory scheme"[41] or (2) a nonjurisdictional condition precedent.[42]

¶ 21 The Court need not engage in what would be an essentially academic exercise to determine which of these two options best fits the requirements of § 6–211(F). Contrary to the DPS's brief, characterizing § 6–211(F) as jurisdictional is not determinative of burdens of pleading or proof.[43] Generally, the burden of proof as to a particular fact rests upon the party asserting that fact, and whether a party has a burden to assert a particular fact often depends upon whether the fact is part of a claim or defense made by the party.[44] Our Pleading Code makes lack of *in personam* and subject matter jurisdiction *procedural defenses* to be raised, for example, by responsive pleading and by motion.[45] Section 6–211(A) expressly states that the proceeding in the District Court

"shall be exempt from the provisions of the Oklahoma Pleading and Discovery codes, except that the appeal shall be by petition, without responsive pleadings." This procedure denies to both sides of the dispute the ability to file pleadings to give notice of the facts and law at issue.

¶ 22 The nature of the District Court proceeding is a review of the correctness of the DPS decision, and it is the DPS who has the burden to show that the decision was correct by producing the entire administrative record for the District Court's review. In 1986, we observed that the legislature may, of course, define the issues to be resolved in an administrative revocation hearing.[46] We explained that the clear language of 47 O.S. § 754(5) then in effect defined the range of inquiry for a § 754 license revocation hearing.[47] The *absence* of a statutory require-

---

**41.** Jurisdictional facts which may be jurisdictional "in the sense that their existence is a condition precedent to the operation of the statutory scheme" are determined by the District Court. *U.S. Fidelity & Guar. Co. v. State ex rel. Oklahoma Tax Commission*, 2002 OK 42, n. 57, 54 P.3d 1010, 1022.

**42.** *See, e.g., Gurley v. Memorial Hosp. of Guymon*, 1989 OK 34, 770 P.2d 573, 576 ("Compliance with notice of claim provisions [for a tort claims against political subdivisions] has been interpreted to be either a condition precedent to suit against a political subdivision, or a jurisdictional prerequisite to judicial intervention.") (explanatory phrase added and citations omitted).

**43.** The DPS also relies upon opinions where we explained that notice of a plaintiff asserting long-arm jurisdiction should appear on the face of plaintiff's petition. In *City of Muskogee v. Martin*, 1990 OK 70, n. 46, 796 P.2d 337, 344, we observed that a party's reliance upon (1) a long-arm *in personam* jurisdiction opinion and (2) the concept that a plaintiff had a pleading burden, "is clearly distinguishable" from an employment controversy involving an Oklahoma municipality and an Oklahoma resident. The same may be said in this dispute between a state agency and an Oklahoma resident.

**44.** *Colton v. Huntleigh USA Corp.*, 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073 ("The burden of proof as to any particular fact rests upon the party asserting such fact.").

**45.** 12 O.S.2011 § 2012(B), states in part:
"B. HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the respon-

sive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
1. Lack of jurisdiction over the subject matter;
2. Lack of jurisdiction over the person; . . . ."

**46.** *Price v. Reed*, 1986 OK 43, 725 P.2d 1254, 1261.

**47.** *Price* noted language in the 1982 version of § 754(5)(a) which discussed the scope of issues at an administrative hearing. *Price*, 725 P.2d at 1256, n. 2. Language similar to the 1982 version of § 754(5)(a) is codified at 47 O.S.2011 § 754(F).

The 2011 version of § 754(F) (with emphasis added) states in part the following.
"F. ... The hearing may be recorded and *its scope shall cover the issues* of whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance as prohibited by law, and whether the person was placed under arrest.
1. If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, *the scope of the hearing shall also cover the issues* as to whether:
a. if timely requested by the person, the person was not denied a breath or blood test,
b. the specimen was obtained from the person within two (2) hours of the arrest of the person,
c. the person, if under twenty-one (21) years of age, was advised that driving privileges

ment to support administrative license revocation may make a DPS order vulnerable to invalidation on a timely appeal.[48] Obviously, the *presence* of the statutory requirements for revocation of a license appearing *on the administrative record* that is made part of the District Court trial de novo record will usually[49] make the DPS order invulnerable to judicial invalidation on a timely appeal *if* the facts appearing in the administrative/District Court record are unsuccessfully challenged in the District Court trial de novo. The District Court's determination of the proper result based upon on the evidence is not independent of the DPS's order, but an adjudication whether the person "shall be subject **to the [DPS's] order** of denial, cancellation, suspension or revocation...." § 6–211(I) (emphasis and explanation added). This means that a judicial adjudication which

agrees with the DPS order does not result in a District Court order that supplants the DPS's order with similar findings and result, but rather a District Court order that leaves intact the legal vitality of the DPS's order. In sum, the DPS administrative record **must** be before the District Court.

¶ 23 The statutory restraint on pleading makes sense from a due process perspective only if the Legislature intended the District Court to have the complete administrative record before it when exercising review provided by § 6–211, both review of the administrative exhaustion discussed in paragraph "F" and review of the merits discussed in paragraph "I". Due process is applicable to the District Court proceeding[50] and each party is entitled to know what is being tried, or at least to the means to find out, and trial by ambush is not an acceptable method for

would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,

d. the person, if twenty-one (21) years of age or older, was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eight-hundredths (0.08) or more, and

e. the test result in fact reflects the alcohol concentration.

2. If the revocation or denial is based upon the refusal of the person to submit to a breath or blood test, reflected in a sworn report by a law enforcement officer, *the scope of the hearing* shall also include whether:

a. the person refused to submit to the test or tests, and

b. the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test or tests.

48. *Chase v. State ex rel. Dept. of Public Safety*, 1990 OK 78, 795 P.2d 1048, 1050 ("This patent deficiency in the statutorily required DPS material does indeed make the Department's revocation order vulnerable to invalidation, on timely appeal, for failure to meet the minimum legislatively prescribed standards for the DPS paperwork on which its administrative action must be rested.") (emphasis and authority deleted).

49. Facts and legal authority *outside the administrative record* may be used to present a successful challenge to a revocation. 47 O.S.2011 § 6–211(I). The District Court possesses a discretion, governed by relevant statutes, to modify a revocation in certain circumstances. For example, 47 O.S.2011 § 6–211(H) provides that "the district court may, in its discretion, modify the revocation as provided for in Section 755 of this title." Section 755 provides that a district court

"may modify" a revocation or denial in certain statutorily specified circumstances.

47 O.S.2011 § 755:

If the revocation or denial is sustained, the person whose license or permit to drive or nonresident operating privilege has been revoked or denied may file a petition for appeal in the district court in the manner and subject to the proceedings provided for in Section 6–211 of this title. The district court may modify the revocation or denial when it is determined by the court that the person whose license or permit to drive has been revoked or denied has no other adequate means of transportation and may enter a written order directing the Department of Public Safety to allow driving, subject to the limitations of Section 6–205.1 of this title and the requirement of an ignition interlock device as provided in Section 754.1 of this title; provided, any modification under this paragraph shall apply to Class D motor vehicles only.

50. *Price v. Reed*, 1986 OK 43, 725 P.2d 1254, 1260 ("One's claim to a driver's license is indeed a protectible property interest that may not be terminated without due process guaranteed by the Fourteenth Amendment.") (authority omitted).

In *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) the High Court observed that "Once licenses are issued, ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."

revoking a state license.[51] One reason for this is that a party *must know what issues will be tried prior to the trial.*[52] At the very least, the administrative record must be made part of the District Court proceeding and this Court should provide that the parties be given an opportunity to know the nature of the opposing parties' claims at a pretrial conference.

¶ 24 Although I made this statement at the beginning of this opinion, it deserves repeating, *this Court simply cannot remain silent when a state agency expressly advocates in this Court that the agency may revoke a state license deserving due process protection by utilizing a trial by ambush in a District Court.* When the DPS follows its statutory mandate to produce the administrative record for District Court review, issues such as that decided by the Court today on whether

the licensee must produce a certified copy of the DPS order should become moot because evidence in the administrative record showing exhaustion is necessary *only for review to occur and not for invoking jurisdiction and commencement of the District Court appeal.*[53]

¶ 25 There is nothing novel about requiring the .DPS, as an administrative agency, to produce an administrative record for a District Court. Article II of the current Oklahoma Administrative Procedures Act requires an administrative agency to transmit the complete record, or a certified copy, of an individual proceeding to the District Court for appellate review within sixty days after service of the petition for review.[54] In 1973 we explained that hearings before the Commissioner of Public Safety were "excluded" from the procedural provisions of the

---

**51.** *Triad Elec. & Controls, Inc. v. Power Systems Engineering, Inc.,* 117 F.3d 180, 193 (5th Cir. 1997). *See Jimenez v. Tuna Vessel Granada,* 652 F.2d 415, 420 (5th Cir.1981) ("... each party is entitled to know what is being tried, or at least to the means to find out. Notice remains a first-reader element of procedural due process, and trial by ambush is no more favored here than elsewhere."). *See also Barker v. Bledsoe,* 85 F.R.D. 545, 547 (W.D.Okla.1979) ("Our modern jurisprudence no longer fosters 'trial by ambush.' ").

**52.** *Booth v. McKnight,* 2003 OK 49, ¶¶ 20–21, 70 P.3d 855, 863 ("At the bare minimum, a constitutionally adequate notice must apprise one of the antagonist's pressed demands and of the result consequent upon default.... In order to accomplish that task, notice must provide one with more than the naked logistics of the hearing. For intelligently framing one's defense *a person must know what issues one will be confronted with.*") (emphasis added).

**53.** Section 6–211(F) requires exhaustion, but it does not require the petition to plead exhaustion or require filing at a certain time a document showing exhaustion. The issue is similar to our *former* jurisprudence discussing appellate jurisdiction being based upon the existence of a judgment, but when no jurisdictional requirement existed on *when* that judgment must be filed before the appellate tribunal other than as necessary for appellate review. *See, e.g., Willitt v. ASG Industries,* 1978 OK 1, 572 P.2d 1296, 1297 ("If a fundamental document does not appear in the appeal record, the appellate court should require the record to show the document. If appellant neglected to make the record so show, after the court's order so directing, the appellate court

may then justifiably dismiss the appeal."); *Johnson v. Johnson,* 1983 OK 117, 674 P.2d 539, 542 ("... the legislature intended to make the inclusion of a 'recorded written' memorial a *sine qua non* of *appellate review* rather than a jurisdictional prerequisite to the commencement of an appeal.") (emphasis in original). We explained in *Johnson* that 12 O.S.1981 § 32.2 made the recorded judgment "a jurisdictional prerequisite to appellate review." 674 P.2d at 542. Even if one assumes for the purpose of argument that § 6–211(F) is jurisdictional, the statutory jurisdictional prerequisite of administrative exhaustion in § 6–211(F), like the statutory jurisdictional requirement of 12 O.S.1981 § 32.2, *need only appear in the record submitted to the reviewing court,* and this would be accomplished when the DPS files or introduces into evidence the administrative record.

**54.** 75 O.S.2011 § 320:

"Within sixty (60) days after service of the petition for review or equivalent process upon it, or within such further time as the reviewing court, upon application for good cause shown, may allow, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review. For purposes of this section, 'record' shall include such information as specified by Section 309 of this title. By stipulation of all parties to the review proceeding, the record may be shortened. Any party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs resulting therefrom. The court may require or permit subsequent corrections or additions to the record when deemed desirable."

OAPA.[55] The current Oklahoma Administrative Procedures Act specifically exempts "driver license hearings" from the application of that OAPA.[56] Although the OAPA procedure for filing an administrative record in the District Court does not apply to the DPS, 47 O.S. § 6–211 requires the DPS to present the administrative record to the District Court for satisfaction of its burden of proof and for the District Court to adjudicate the correctness of the DPS decision.

¶ 26 In summary, the DPS has an evidentiary burden to prove its case in the District Court in a trial de novo. Because (1) § 6–211 specifically requires all of the DPS records to be before the trial court for the trial de novo, (2) the trial court must determine if the DPS order was correct, (3) the Pleading Code does not apply and no responsive pleadings are filed by the DPS, and (4) no statute prohibits filing the DPS record with the Clerk of the District Court; the DPS must either file the original (or certified copy) of the administrative record, including driving record of the licensee, with the Clerk of the District Court prior to trial, or introduce that record into evidence at the District Court hearing. The order of the District Court should be reversed with instructions for the DPS to file the administrative record and the matter proceed on that record and any additional evidence the parties desire to submit.

---

**55.** *Oklahoma Dept. of Public Safety v. Robinson,* 1973 OK 80, 512 P.2d 128, 131 ("Hearings before the commissioner are controlled by the provision of the Motor Vehicle Code and by the general statutes. They are excluded as to procedural provisions from the Administrative Procedures Act by 75 O.S.1971 § 325."). *See also Chase v. State ex rel. Dept. of Public Safety,* 1990 OK 78, n. 2, 795 P.2d 1048, 1049 ("Adjudicative hearings in a driver's license revocation proceeding before the Public Safety Department are not governed by the Administrative Procedures Act.").

**56.** The Department of Public Safety exemption from Article II of the Oklahoma Administrative Procedures Act is codified at 75 O.S.2011 § 250.4(B)(14): "As specified, the following agencies or classes of agency activities are not required to comply with the provisions of Article II of the Administrative Procedures Act: ... (14) The Commissioner of Public Safety only with respect to driver license hearings and hearings conducted pursuant to the provisions of Section 2-115 of Title 47 of the Oklahoma Statutes;...."